No. 12851

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

DOUGLAS R. McGUIRE,

Plaintiff and Appellant,

-vs-

HOWARD NELSON et al.,

Defendant and Respondent.

---

Appeal from: District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Recording:

For Appellant:

Berger, Anderson, Sinclair and Murphy, Billings, Montana
Richard Anderson argued, Billings, Montana

For Respondent:

Bennett and Bennett, Bozeman, Montana
Anderson, Symmes, Forbes, Peete & Brown, Billings,
Montana
Rockwood Brown argued, Billings, Montana

---

Submitted: March 5, 1975

Decided: JUN 13 1975

Filed: JUN 13 1975

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff Douglas R. McGuire appeals from a judgment entered in the district court, Gallatin County, when, after presentation of plaintiff's case in chief, the court granted a motion for a directed verdict in favor of defendant American Honda Company.

The action was brought by plaintiff to recover damages suffered as a result of a motorcycle accident involving a motorcycle owned by plaintiff and manufactured by defendant.

Plaintiff, while riding the motorcycle with his wife behind him, began a descent down an incline in an area near Bozeman, Montana used by motorcyclists and known as the "Pits", when his front wheel locked resulting in his being thrown over the handlebars onto the ground. He received a broken pelvis; his wife was not injured.

Plaintiff originally brought a negligence action against the local Honda dealer, Howard Nelson, d/b/a Harmony House, alleging the dealer negligently sold plaintiff's wife the wrong size tire for the Honda. The particular model owned by plaintiff was a CT200 90 c.c. trail bike and had the unique design feature which required a 2.50 x 17 tire in the front and a 2.75 x 17 tire in the rear. Nelson sold plaintiff's wife a 2.75 x 17 tire which was mounted on the front wheel. While going down the hill plaintiff alleges the tire was forced up against the fender of the Honda causing the Honda to stop, throwing both plaintiff and his wife from the Honda, resulting in the injuries to plaintiff.

The jury in that action found for plaintiff and awarded him $45,000. Nelson appealed that verdict to this Court challenging the in court demonstration by plaintiff's expert witness. The witness was allowed to perform a demonstration in the presence of the jury which was designed to demonstrate that force applied to

the front wheel suspension system would bind the front wheel and how the oversized tire might have locked the wheel and caused the accident. The witness was allowed to suppress the suspension by the use of a furniture clamp on one side of the wheel.

On appeal, this Court in McGuire v. Nelson, 162 Mont. 37, 508 P.2d 558, held there was no foundation to show that the force used in the demonstration was similar to the conditions and the force applied to the front suspension by two persons on the bike at the time of the accident. The cause was returned to the district court for a new trial.

Plaintiff then filed an amended complaint naming American Honda Company as an additional defendant. The complaint against Honda is a strict liability case alleging that Honda marketed a dangerously defective product, negligently designed it, and negligently failed to warn against the consequences of misuse.

The case was tried to a jury on June 4, 1974. When plaintiff rested his case both defendants moved for a directed verdict. Honda's motion was granted and judgment entered. The matter was settled between defendant Nelson and plaintiff on a covenant not to sue, for the amount of $3,750.

Several issues are presented for review on appeal. The dispositive issue concerns the exclusion of the testimony of plaintiff's expert witness, Roy Prussing, as to his opinion concerning the design of the suspension system and its relation to the fender and tire and ultimately the safety of this design and/ or its defects; also the matter of proof of causation of the accident.

Witness Prussing was duly qualified as an expert witness. His testimony shows that he was a graduate of Utilities Engineering Institute of Chicago and was a registered professional engineer in the states of Montana, Wyoming and Minnesota; that he has

been a professional engineer since 1944 and been in the engineering business since 1936; that for 10-12 years he worked as an engineer for an Indian Motorcycle firm and during his association with that company he had an opportunity to work with many different types of motorcycles; that he also had extensive operational experience. There was no challenge of his credentials as an expert witness by defendant Honda Company or defendant Howard Nelson.

During testimony it was established that Prussing had examined the machine involved here and the terrain where the accident occurred. He had examined primarily the design features of the front suspension; the method employed in suspending the front wheel; the clearance built into the suspension system; and characteristics such as limits of travel clearance, etc. He explained the working parts and how the tire and wheel functioned with the suspension. He explained to the jury the meaning of the two tire sizes involved in the case. It seems that the engineer experimented with the correct tire for the front wheel and interpolated clearance figures to the larger tire to arrive at his opinion as it concerned the problem at hand.

Objection was entered and the jury was excused. Prussing explained he had used two furniture clamps to depress the suspension system to avoid any binding effect and the purpose was to establish the point at which the suspension system was fully depressed and/or let the suspension system go to the limit of its travel. This would permit the engineer to establish clearance between fender and fork within the design limits of the suspension system. At this point this testimony was had:

> "THE COURT: Ask him the sixty-four dollar question. Are the tests similar to riding this under the circumstances of the case, under McGuire's testimony? We really haven't got that in, but we know what his testimony was, that he was riding

- 4 -

it out on the Pits and suddenly it froze.

"Q. Did the use of the furniture clamps on the machine in question, Mr. Prussing, duplicate the up and down action of the suspension?

"MR. LYMAN H. BENNETT, JR.: Objected to as calling for a conclusion of this witness without any foundation laid at all in the light of the fact that the witness can't--

"THE COURT: I don't know that it is or not. Overruled, at this time.

"MR. LYMAN H. BENNETT, JR.: May we ask him a question on voir dire?

"THE COURT: Wait a minute until we get this out. You can voir dire. You can cross him, as a matter of fact.

"Q. Did the use of the furniture clamps, Mr. Prussing, in your opinion, merely duplicate the up and down action of the flection as it depresses over bumps in the terrain over which the bicycle was ridden? A. It did. It establishes the limits of travel.

"Q. And did it cause the suspension to do anything other than what it would do in normal use on the trail? A. It did not. We merely held it there so I could take measurements.

"Q. And then you released them? A. Then I released them.

"Q. All right."

Under cross-examination, he testified:

"MR. BROWN: Now, Mr. Prussing, I will hold you to your scientific standing. Can you state with any scientific accuracy that the pressure applied with the clamp was the same that you would experience in the field, with any reasonable scientific certainty?

"THE WITNESS: The clamps applied pressure to that suspension system to the point where it bottomed out or reached the end of its travel. This same thing would happen in the field under field conditions."

There followed a great deal of testimony designed to diminish the accuracy of the engineer's tests. He freely admitted he did not measure pressure in foot pounds but seemed to indicate he could establish from the evidence at hand and his experiments, that the wheel under field conditions of the day of the accident

- 5 -

would make contact with the fender housing. Then this testimony was had:

> "MR. BROWN: So, you can't tell by your test whether or not this tire accurately locked up, seized, or bound. You can merely state that it rubbed, is that right?
>
> "THE WITNESS: That's right. The degree of contact I could not say at that time of the accident what it was.
>
> "MR. BROWN: Now, isn't it true, Mr. Prussing, that the real answer to that sixty-four dollar question of whether it would seize or bind as clamped in this case would be what is called a dynamic test, that is, a test in the field, actually operating the machine under similar conditions?
>
> "THE WITNESS: That would be a dynamic test; right.
>
> "MR. BROWN: Well, my question is: Is it not true that a dynamic test would be the only way which you could determine whether this particular tire on this particular suspension would, in fact, bind or seize as alleged?
>
> "THE WITNESS: I don't think so. I think that could be determined statistically, also.
>
> "MR. BROWN: Well, you previously testified that you don't know from your test whether it did, and could not tell from the test that you took; is that right?
>
> "THE WITNESS: I did not make that test myself. I made measurements, and by calculations, in my opinion, it would rub and make contact.
>
> "MR. BROWN: But, you are not willing to state scientifically beyond that that it would rub or make contact?
>
> "THE WITNESS: It would make contact. It would rub. To what extent in foot pounds, I am not in a position to say.
>
> "MR. BROWN: You, yourself, did not conduct any dynamic tests or tests in the field?
>
> "THE WITNESS: I did not."

Plaintiff then proposed a hypothetical question that included design, defect and causation, based on reasonable certainty as established by mechanical design standards and knowledge. After objections by both defense counsel, the court ruled.

- 6 -

"THE COURT: Taking the hypothetical question by its four corners, and assuming for the purpose of my ruling that all of the facts alleged and set out in the hypothetical question could be proved or would be a matter of record in this cause, the Court is still going to sustain the objection. I think that the Court, the Supreme Court has indicated to this trial court that the evidence must be related to those Pits and to what actually occurred out there. And I think to allow this, to go in on the question of design, now, question of design is a question of discretion. It is a question of discretion among design engineers. That is why we have different designs and situations. It is a question of cutting and covering. It is a question of economics. It is a fight between the engineer and the production department. It is a fight between the engineer and the designing engineer as to how much they can afford to spend on design in order to produce this or that. And we get into a multiplicity of problems here. And I am going to sustain the objection.

"Now, do you want to use this witness for anything else?

"MR. ANDERSON: I would, without going into exactly what his examination is, ask him if, based upon such examination of this machine and the accident scene, he has any opinion as to whether the front suspension design is a safe one."

Immediately there were objections which were sustained by the court. The witness was not allowed to give his opinion as it concerned safe design.

There has been a great deal said about the holding of this Court in the first case, McGuire v. Nelson, supra. We excluded there an in court demonstration because there was no foundation. It was a negligence action against the dealer who sold the tire to plaintiff's wife. The instant case is one that the court and defense counsel characterize as strict liability--defective product--negligent design--failure to warn. There has been no prohibition declared against static tests or using clamps in connection therewith, if there is a process used or an expert that can use these processes to establish causation and in this case the design problems.

When plaintiff rested his case in chief Honda moved for

a directed verdict on two principal grounds:

(1)   there was no proof of any defective condition in the Honda CT200 which would be unreasonably dangerous to the user; and

(2)   no causal connection has been established in this case between the claimed condition of the oversized, wrong sized tire and the accident.   The district court granted the directed verdict.

It has long been held by this Court that the law does not favor directed verdicts and the evidence therefore will be viewed in the light most favorable to appellants, as having proved what it tends to prove.  Johnson v. Chicago, M. & St. P. R. Co., 71 Mont. 390, 394, 230 P. 52.  This Court has also long held that cases should not be withdrawn from a jury unless reasonable and fair-minded men could reach only one conclusion from the facts.  In re Estate of Hall v. Milkovich, 158 Mont. 438, 492 P.2d 1388.

Honda Company, in support of the directed verdict, argues that neither plaintiff nor his wife actually saw the front wheel at the time of the accident and therefore, they were unable to state precisely what happened in relation to the front tire at the time.  The only other evidence plaintiff could offer aside from the testimony of Prussing regarding his test and the safety of the design, was the testimony of plaintiff, his wife and his cousin, George Barclay, who after an outing ten months after the accident occurred, observed that the front wheel rubbed when they rode over rocks or jumped on the front fork.

As this Court stated in Brandenburger v. Toyota Motor Sales, 162 Mont. 506, 517, 513 P.2d 268, circumstantial evidence is sufficient and often times necessary in a strict liability case to prove causation.  In Brandenburger the Court quoted from Lindsay

- 8 -

v. McDonnell Douglas Aircraft Corp., 460 F.2d 631, 639:

> "'There would be little gain to the consuming public if the courts would establish a form of recovery with one hand and take it away with the other by establishing impossible standards of proof. The proof required in a strict liability case must be realistically tailored to the circumstances which caused the form of action to be created.'"

In cases, such as the instant one, where no one can testify he actually saw the tire bind with the fender, circumstantial evidence must be allowed or the court would be taking away the right of plaintiff to recover on a strict liability action. It would be unrealistic to expect the riders of the Honda to actually observe the front tire bind for them to proceed under a strict liability theory of design defect.

Here, there was testimony from subsequent riders that the tire caught when it went over large rocks. There was also testimony of rub marks inside the front fender and gouge marks on the tire. The Honda engineer testified that the rub marks could have been left by the oversized tire. All that testimony, combined with Prussing's testimony as to whether or not he considered the design to be dangerous, had it been allowed into testimony, would have been sufficient evidence to allow the case to go to the jury, although it is all circumstantial evidence. In fact, Prussing in his testimony, indicated that his testimony could lend support to causation as well as design defect. Viewing the causation in the light most favorable to plaintiff, as we must, reasonable and fair minded men could reach different conclusions.

We have an impasse on the testimony of the engineer as to the design defect, etc. The defense maintains it invades the province of the jury and the court held it to be improper evidence, in any case.

Of course, there was a great deal of discussion about the admissibility of expert testimony. In Frumer and Friedman, Products

Liability, V.1, §12.02[2] [a], p. 246, quoting from Grismore v. Consolidated Products Co., 232 Iowa 328, 5 N.W.2d 646, 655, it is stated:

> "The modern tendency of the courts everywhere is to take a more liberal and rational view respecting the admissibility and scope of such testimony. This court early announced that in all proceedings involving matters of a scientific, mechanical, professional, or of like nature, requiring special study, experience or observation, or where the connection between the cause and effect was a matter of specialized knowledge, not within the knowledge of laymen in general, expert opinion testimony was admissible to aid the court or the jury in arriving at a correct determination of the litigated issue. There are many matters of scientific investigation and specialized knowledge in the fields of the professions, trades, business, industry, art, and other endeavors where the minds of those not learned therein necessarily grope but blindly. Expert opinion in such cases is indispensable to aid the jurors in reaching a correct conclusion, and the fact that the matter inquired about is a vital and controlling fact in the trial, or is even the ultimate fact, which the jury are to pass upon and determine, is no reason why the opinion should not be received."

Product liability is a relatively new branch of the law, and the role of the expert witness in this field has become more important. This Court stated in Brandenburger, quoting the Hawaii Supreme Court in Stewart v. Budget Rent-A-Car, 52 Haw. 71, 470 P.2d 240, 243, as to the acceptable type of evidence to be used by a plaintiff to prove a defect in a manufacturer's or distributor's product, in a strict liability case:

> "'The nature and quality of evidence used in products liability cases to show the defect and the nexus between the defect and the accident naturally varies. The most convincing evidence is an expert's pinpointing the defect and giving his opinion on the precise cause of the accident after a thorough inspection.'" (Emphasis added.)

The fact that Prussing's qualifications as an expert was never questioned and his experience in the field as a mechanical engineer; considering his experience working with motorcycles; and considering that Prussing inspected the particular Honda model involved in the accident and was familiar with the

- 10 -

design both from personal observation and from studying schematics of the suspension system supplied by the Honda Company, it is apparent that Prussing was well qualified to give his opinion as to the alleged defect in the design of the Honda model in question and whether it could or did cause the accident, as alleged. We can find no difference between that testimony and the testimony this Court allowed in Brandenburger where an expert witness was allowed to testify as to the defect in the design of the roof of the Toyota Land Cruiser.

Counsel for Honda argues that such testimony invades the province of the jury. Admittedly Prussing's testimony would involve the ultimate conclusion which the jury was required to determine. This, however, does not of itself furnish a basis for its rejection. Although there are authorities which indicate that the appropriate test should be whether the opinion invades the province of the jury, it would seem that the better reasoned cases reject this as the test.

In VII Wigmore on Evidence, 3d ed. §1920, Professor Wigmore in his criticism of the rule states:

> " * * * because the witness, in expressing his opinion, is not attempting to 'usurp' the jury's function; nor could if he desired. He is not attempting it, because his error (if it were one) consists merely in offering to the jury a piece of testimony which ought not to go there; and he could not usurp it if he would, because the jury may still reject his opinion and accept some other view, and no legal power, not even the judge's order, can compel them to accept the witness' opinion against their own. * * *"

Wigmore's views have been widely adopted in the United States. Bridges v. Lintz, 140 Col. 582, 346 P.2d 571; Grismore v. Consolidated Products Co., supra; Schweiger v. Solbeck, 191 Ore. 454, 230 P.2d 195, 29 ALR2d 435. Rule 409 of the American Law Institute's Model Code of Evidence, p. 210, expressly states that a witness may draw an inference "whether or not any such inference

- 11 -

embraces an ultimate issue to be decided by the trier of fact * * *".

This Court has repeatedly held that expert opinion evidence is admissible in explaining the cause of a particular accident. Pachek v. Norton Concrete Co., 160 Mont. 16, 21, 499 P.2d 766. The opinion of a witness on a material question of science, art, or trade in which he is skilled is admissible in evidence. Section 93-401-27, R.C.M. 1947. There are a multitude of cases allowing expert testimony on the ultimate question before the jury. See annotation: 62 ALR2d 1426.

The true test would seem to be whether the subject is sufficiently complex so as to be susceptible to opinion evidence, and whether the witness is properly qualified to give his opinion. Here, there is no doubt that the relationship of the suspension system of the front wheel of a CT200 90 c.c. Honda trail bike to its tire size would not be common knowledge to members of the jury, but a question of mechanical engineering. Also, there is no doubt that Prussing is well qualified to testify on the matter. In view of the fact that the jury can either reject or accept the expert witness' opinion or give limited weight to it, we fail to see how the admission of the evidence here could constitute a usurpation of the jury's function.

The judgment of the district court is reversed and the cause remanded for a new trial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices                    - 12 -