No. 13887

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

TERRANCE ALAN PETKO,

Defendant and Appellant.

---

Appeal from: District Court of the Third Judicial District,
Honorable Edward Dussault, Judge presiding.

Counsel of Record:

For Appellant:

Edward Yelsa argued, Anaconda, Montana

For Respondent:

Hon. Mike Greeley, Attorney General, Helena, Montana
Charles R. Anderson, argued, Assistant Attorney General,
Helena, Montana
John Radonich, County Attorney, Anaconda, Montana

---

Submitted: June 5, 1978

Decided: JUL 3 1978

Filed: JUL 3 1978

---

Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court:

On January 6, 1977 defendant Terrance Alan Petko was arrested and subsequently charged in the District Court, Deer Lodge County, with two counts: Felony possession of marijuana and possession with intent to sell. The second count was subsequently dropped during trial. The case was tried to a jury, defendant was found guilty and given a deferred imposition of sentence under the condition that he pay $500 within six months. From this sentence defendant appeals and alleges six specifications of error:

1. Whether the warrantless arrest of defendant was lawful?

2. Whether the conviction should be reversed because evidence which was viewed by the jury and commented on by witnesses was subsequently suppressed by the trial judge?

3. Whether the fact that defendant never entered a formal plea of not guilty is a jurisdictional defect warranting a new trial?

4. Whether the state's expert could properly testify that the evidence seized was marijuana?

5. Whether it was error for the District Court to refuse to give defendant's proposed instructions 7 and 19?

6. Whether a fine of $500 payable within six months is a proper condition pursuant to a deferred imposition of sentence?

The events leading to the warrantless arrest of defendant Petko, were:

Officers Bernard May and Richard Ivankovich were driving south on Maple Street in Anaconda at approximately 11:30 p.m., Jaunuary 6, 1977. Maple Street was well lit by street lights. The officers were traveling at approximately 10 to 15 miles per hour.

- 2 -

In front of 508 Maple the officers observed two persons approaching a blue Rambler automobile. One person was tall, slender, had shoulder length hair and was wearing a dark blue coat. The other person was shorter and wore a lighter colored coat. The shorter of the individuals was carrying a large grocery sack and acted nervous and peculiar at the officers drove by. The officers continued to observe the two and saw the shorter man place the grocery sack in the street behind the sheel of a truck parked on Maple Street. Then both individuals hurriedly got into a Rambler automobile and left in a northerly direction at a high rate of speed.

The officers retrieved the abandoned sack. Inside the sack they found 21 cellophane bags containing a substance which appeared to be marijuana and a metric scale. The officers then attempted to find the Rambler automobile but were unsuccessful. After radioing the city police and the highway patrol for assistance the officers returned to the vicinity of 508 Maple and parked near the alley between Maple and Elm. Approximately fifteen or twenty minutes after the initial encounter with the two individuals, the officers observed defendant coming down the alley behind 508 Maple carrying a large grocery sack. Defendant was tall, had a slender build and was wearing the same color coat as the person seen in front of 508 Maple. The officers believed him to be the same person they had seen when the first sack of marijuana was abandoned on Maple Street.

When the officers entered the alley defendant started to run, jumped a fence and ran across Elm Street. As the officers pursued they identified themselves and Officer Ivankovich fired a warning shot in the air. Defendant slipped, fell to the ground and was apprehended by Officer May. The sack found in the possession of defendant at the time of his arrest revealed 24 cellophane bags and one large plastic sack which contained a substance that appeared to be marijuana.

Chemical analysis subsequently disclosed the first grocery sack contained 530 grams of marijuana and the second grocery sack found in possession of defendant contained 858 grans of marijuana.

A search was conducted of defendant's car and his house at 508 Maple but the evidence seized therein was suppressed on motion of defendant.

Defendant was charged with two counts:

1. Felony possession of dangerous drugs under section 54-133, R.C.M. 1947.

2. Criminal possession of dangerous drugs with intent to sell pursuant to section 54-133.1, R.C.M. 1947.

Following the District Court's suppression of the marijuana contained in the first grocery sack found in the street the proseuction dismissed the second count since section 54-133.1 requires one kilogram or more. Thereafter the jury was admonished to disregard the first grocery sack of marijuana and to consider only the first count of felony possession, based upon the second grocery sack of marijuana found in the possession of defendant.

Defendant's conviction for possession of the second grocery sack containing 858 grams of marijuana which was taken from defendant's possession at the time of his arrest is the subject of this appeal.

In Issue No. 1 defendant contends the arrest was illegal and therefore the search and seizure incident to the arrest was also illegal and the admission of the fruits of the search at trial constituted reversible error.

The criteria for testing the sufficiency of a warrantless arrest, as in this case, was recently stated by this Court in State

- 4 -

v. Lenon, (1977), _____Mont._____, 570 P.2d 901, 34 St.Rep. 1153, 1156, quoting from State v. Hill, (1976), _____Mont.____, 550 P.2d 390, 33 St. Rep. 496:

> "'Probable cause to arrest without a warrant exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'"

The facts and circumstances within the officers' personal knowledge at the time of defendant's arrest were:

a)  Two individuals were seen emerging from 508 Maple Street at 11:30 p.m.;

b)  Maple Street was illuminated by street lights;

c)  The two individuals were one tall man, with a slender build, shoulder length hair and a dark blue coat, and a shorter man with a light colored coat;

d)  The two men acted nervous and suspicious when the officers drove by, and the shorter man hurriedly placed a grocery bag which he was carrying behind the wheel of a Datsun pickup, and both men jumped into a Rambler automobile and left at a high rate of speed;

e)  The officers retrieved the abandoned grocery bag and found 21 cellophane bags containing a substance believed to be marijuana and a metric scale;

f)  Both officers were experienced and trained in the detection of marijuana;

g)  After an unsuccessful search for the Rambler automobile the officers returned to the vicinity of 508 Maple and fifteen or twenty minutes after their first encounter, they saw defendant walking down the alley behind 508 Maple, carrying a grocery bag similar to the one previously abandoned on Maple Street;

h) Defendant met the description of the taller of the two individuals who abandoned the marijuana found on Maple Street. He appeared to the officers to be the same individual; and

i) Upon seeing the officers defendant attempted to escape, and continued to do so even though the officers' identified themselves to him.

These facts and circumstances would justify a man of reasonable caution to believe that an offense has been or was being committed and there was sufficient probable cause to arrest defendant.

Defendant's arrest was based upon probable cause and therefore a lawful arrest. The seizure of the grocery sack in his possession and in plain view was made pursuant to a valid lawful arrest. The District Court properly denied the motion to suppress this evidence.

Regarding Issue No. 2, the trial court reversed its ruling on the state's exhibits which consisted of the contents of the first grocery bag abandoned on Maple Street and this evidence was shown to the jury and commented upon by witnesses prior to its exclusion. During the time the court delayed ruling upon the admissibility of the exhibits, the bags of marijuana and the metric scale were displayed before the jury and commented upon by Officer May, Officer Ivankovich and the forensic chemist, Arnold Melnikoff. Officer Ivankovich testified at length on the finding of the evidence, the contents of the bag, and how the scale was used to weigh fine weights. The scale was attributed as having come out of the house of Terrance Petko at 508 Maple Street. The question was asked Officer Ivankovich - "Would this be something that would be used by somebody who would be packaging in the form of lids?" Officer Ivankovich answered "Yes".

- 6 -

530 grams of marijuana and a weight scale, similar to ones typically used for weighing marijuana for sale was displayed to the jury and commented on by state witnesses. When the trial judge decided to suppress the above evidence he admonished the jury to disregard the first grocery sack of marijuana and to consider only the first count, felony possession of marijuana based upon the second grocery sack of marijuana found in defendant's possession.

It is apparent the trial court committed error by allowing the jury to view the evidence and permit the witnesses to comment upon it. However, we must examine all of the circumstances surrounding the error and determine if the defendant's right to a fair trial was substantially prejudiced and therefore entitle him to a new trial.

The District Court did reserve its ruling on the state's exhibits which consisted of the contents of the first grocery bag abandoned on Maple Street. This evidence was shown to the jury and commented upon by witnesses prior to its exclusion.

Defendant was originally charged with two counts: felony possession and possession with intent to sell. When the District Court suppressed the marijuana contained in the first grocery bag found by the officers on Maple Street, the possession with intent to sell was dismissed. The conviction on appeal is felony possession, which results from the possession of marijuana in excess of 60 grams. The second grocery bag, which was in the defendant's possession at the time of his arrest, contained 858 grams of marijuana! Certainly the jury could not ignore this evidence regardless of viewing the original grocery bag and its contents. If this was a borderline case as to the amount possessed or as to possession, then defendant may have a legitimate argument. But in light of the abundance of evidence presented against him on the felony possession

- 7 -

charge, there is little persuasion in the argument that defendant is entitled to a new trial. State v. Bradford, (1978), _____ Mont. _____, 575 P.2d 83, 35 St. Rep. 241.

Issue 3. It appears that the formal entry of a plea by the defendant was never completed. Defendant contends this oversight on the part of the District Court requires a reversal of his conviction even though defendant was represented by counset at all times, was informed of the charges against him and tried by a jury of his peers.

This contention is answered by section 95-1608, R.C.M. 1947, which provides:

> "No irregularity in the arraignment which does not affect the substantial rights of the defendant shall affect the validity of any proceeding in the cause if the defendant pleads to the charge or proceeds to trial without objecting to such irregularity." (Emphasis supplied.)

The Revised Commission Comment to section 95-1608 states:

> "The real question in all criminal cases on appeal is whether the substantial rights of the defendant have been adversely affected. The purpose of this section is to prevent reversal where the court has strayed from the procedure set forth, but the failure has not hindered the defense.

> "The burden is upon the defendant to object, if any irregularity in connection with the arraignment is going to affect his defense. This does not override any of the defendant's substantial constitutional rights even though not objected to."

The defendant did not object to any irregularity before proceeding to trial and we find no prejudice arising from this irregularity.

Issue 4. Defendant argues the court erred in allowing expert testimony as to the substance found in the grocery bags being marijuana. He argues this testimony embraced an ultimate issue to be decided by the jury. There is no dispute that Mr. Melnikoff was qualified as an expert in his field of forensic

- 8 -

chemistry and was testifying as an expert witness when he stated that in his mind he had no doubt the evidence seized was marijuana. This was his opinion based on the tests he ran on the substance seized and such testimony was properly received.

Rule 704, Montana Rules of Evidence, specifically states:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Though the Montana Rules of Evidence were not in effect at the time of this trial Rule 704 is merely a restatement of and is not intended to change existing Montana law. As Commission Comment to Rule 704 states:

"* * * Its affect is to specifically abolish the rule against opinions on ultimate issues of fact, not currently followed in Montana. Therefore, this rule is consistent with existing Montana law. Kelly v. John R. Daily Co., 56 Mont. 63,79, 181 P. 326 (1919); State v. Shannon, 95 Mont. 280, 286, 26 P.2d 360 (1933); State v. Campbell, 146 Mont. 251, 258, 405 P.2d 978 (1965); Rude v. Neal, 165 Mont. 520, 525, 530 P.2d 428 (1974); and McGuire v. Nelson, 167 Mont. 188, 536 P.2d 768, (1975)."

As this Court stated in McGuire v. Nelson, (1975), 167 Mont. 188, 200, 536 P.2d 768, in rejecting the test of whether the opinion invades the province of the jury:

"The true test would seem to be whether the subject is sufficiently complex so as to be susceptible to opinion evidence, and whether the witness is properly qualified to give his opinion."

Here the proper identification of marijuana requires chemical testing conducted by a qualified person, and Arnold Melnikoff was properly qualified to give such an opinion.

Issue 5. Defendant contends the court erred in not giving his proposed instructions, number 7 and number 19.

Defendant's proposed instruction number 7 reads:

"You may not find the defendant guilty as charged unless you have first found that, in addition to the other elements of the crime charged, that said marijuana admitted in evidence herein would produce a hallucinogenic effect on a person, and this must be concluded by you beyond a reasonable doubt."

Defendant's proposed instruction number 19 reads:

"The term Dangerous Drug means any depressant, stimulant, hallucinogenic, or narcotic drug.

"A hallucinogenic drug is a drug which produces hallucinations, that is sensory perceptions not founded upon subjective reality."

Defendant was convicted of felony possession of dangerous drugs pursuant to section 54-133, R.C.M. 1947. Section 54-133 prohibits the possession of any dangerous drug, as defined in action 54-301, R.C.M. 1947. Section 54-301(5) defines "Dangerous drug" as any drug substance, or immediate precursor in Schedules I through V. Schedule I, found in section 54-305, lists marijuana as a dangerous drug.

Marijuana is grouped with hallucinogenic drugs, but this does not call for the trier of fact to make a specific finding as to its hallucinogenic capabilities. The legislature has made that determination.

The determination for the trier of fact is whether the substance introduced at trial is in fact marijuana, as defined by section 54-301(16), which states:

"Marijuana (marihuana) means all plant material from the genus cannabis containing tetrahydrocannabinal (THC) or seeds of the genus capable of germination."

The presence of THC is essential and this the reason for and the necessity of chemical analysis. The jury is not required to find that marijuana admitted into evidence is hallucinogenic but only that it meets the definition of section 54-301(16). The District Court's Instruction No. 8 fully explained the elements of this offense.

- 10 -

Therefore, the District Court properly denied the defendant's proposed instructions requiring the jury to find that the marijuana would produce an hallucinogenic effect and defining the term hallucinogenic.

Issue 6. Whether the District Court committed error in imposing a fine of $500, payable within six months after May 31, 1977, after defendant was found guilty of criminal possession of dangerous drugs and the court deferred the imposition of sentence.

We hold the imposition of a $500 fine or payment as a condition of probation after deferred imposition of sentence to be a nullity and of no force or effect and that the same be vacated and set aside to conform with this Court's Opinion in State v. Merlin Babbit, (1978), ____Mont.____, 574 P.2d 998, 35 St.Rep. 154.

The judgment of the District Court in all other respects is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 11 -