No. 86-352

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

PENNY L. KERR,

        Plaintiff and Respondent,

-vs-

GIBSON'S PRODUCTS COMPANY OF BOZEMAN,
INC., a Montana corporation,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorble Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Landoe, Brown, Planalp, Kommers & Johnstone; Gene I.
Brown, Bozeman, Montana

    For Respondent:

        Cok & Wheat; Michael D. Cok, Bozeman, Montana

---

Submitted on Briefs:  Dec. 3, 1986

Decided:  March 10, 1987

Filed: MAR 1 0 1987

*Ethel M. Harrison*

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Gibson's Products Company of Bozeman, Inc., appeals a jury verdict entered by the District Court of the Eighteenth Judicial District of the State of Montana, in favor of respondent Penny Kerr, on her claims for relief from the termination of her employment.

We affirm.

Gibson's raises two issues for our review:

1. Whether there was substantial credible evidence to support submission of respondent's case to the jury based upon breach of implied covenant of good faith and fair dealing?

2. Whether the jury properly awarded compensatory damages to the respondent?

Kerr (respondent) was hired as a sales clerk and teller on June 14, 1978. She worked in various capacities until February 10, 1984, at which time Roy Hampton, Gibson's manager, discharged her. Hampton testified that Kerr was not terminated for cause but as a necessary business decision.

The issues presented for review involve substantial credible evidence questions. We will examine the facts in a light favorable to respondent. First National Bank in Libby v. Twombly (Mont. 1984), 689 P.2d 1776, 41 St.Rep. 1948; Jacques v. Montana National Guard (1982), 199 Mont. 493, 503,

2

644 P.2d 1319, 1325. Additionally, we will exercise restraint in interfering with the constitutionally-mandated process of jury decision. Barmeyer v. MPC (Mont. 1983), 657 P.2d 594, 40 St.Rep. 23.

During the five and one-half years of her employment, respondent performed her job in a satisfactory manner. She was promoted to the position of department head and supervised at least eight different departments. She also served as head cashier for two years. Kerr's starting wage of $2.75 per hour was steadily increased by eleven merit pay raises to $7.25 per hour. Kerr was never the subject of disciplinary action. In 1983, she publicly received a bonus as a sign of Gibson's appreciation for her five years of service.

Gibson's Products Company of Bozeman, Inc., began to experience financial difficulties in 1980. Its financial difficulties continued until the store was sold to Chaffin, Inc., in May 1984. During 1983 and 1984, Kerr, along with other employees of Gibson's, were assured by Charles Brooks, the store's owner, that Gibson's was not going bankrupt. Hampton and Brooks told the employees that Gibson's would cut back employee hours before they would terminate employees. Despite Hampton's and Brooks' assurances, Kerr was discharged during her shift, without notice or severance pay, on February 10, 1984. Hampton refused to provide her with a refer-

ence letter. Gibson's did not offer her a transfer, reduced hours or reduced pay.

Gibson's contended that Kerr was terminated as part of a legitimate store-wide reduction in force during which Gibson's also discharged or transferred thirteen other employees, some of whom were seasonal employees. However, within four months of Kerr's termination, Gibson's replaced the terminated employees with eleven lower paid employees.

Additionally, the Gibson's employee handbook outlined its termination procedure. The handbook stated that a layoff due to lack of work would be termination without prejudice and the employee would retain recall rights. Kerr was not given recall rights. Further, her termination report indicated there was no chance for rehire.

Kerr filed the present action on November 8, 1984, alleging that she had been wrongfully discharged from her employment with Gibson's Products Company and sought damages under several theories. Kerr alleged that Gibson's breached the implied covenant of good faith and fair dealing. She further alleged that appellant acted negligently, maliciously and with reckless disregard of her rights, entitling her to exemplary damages. The complaint was amended to include a fourth count alleging negligent infliction of emotional distress. A jury trial was held on March 5, 1986. The jury

4

found for Kerr and awarded her $59,026 in compensatory damages.

Issue One

Was there substantial credible evidence to support submission of respondent's case based upon breach of the implied covenant of good faith and fair dealing?

The principal argument advanced by appellant is that Gibson's was experiencing severe economic problems. Therefore, in an effort designed to cut costs, Gibson's terminated the respondent. Appellant claims that bankruptcy of Gibson's was imminent. Appellant did not recall the respondent, offer her a lower paid position or offer to transfer to her to another Gibson's store or department.

In a fashion similar to Flanigan v. Prudential Fed. S & L Assoc. (Mont. 1986), 720 P.2d 257, 259, 43 St.Rep. 941, 943, appellant argues that a Montana jury should not be a silent partner in every decision to terminate an employee. However, here, as in Flanigan, there is evidence that the employer acted with other than purely economic motives when the respondent was terminated.

Kerr disputed that she was terminated as a necessary reduction-of-force. She cites her termination without notice and Gibson's refusal to rehire her at a lower wage. Respondent points to the refusal of Gibson's to offer a letter of

5

recommendation and its hiring of eleven employees at lower wages. One of these newly-hired employees assumed respondent's duties in the lawn and garden department.

Further, Kerr argues that Gibson's failed to follow its own termination policy promulgated in its handbook. The Gibson's employee handbook states as follows: "4. Layoff--A layoff due to lack of work will be considered a termination without prejudice and the employee will retain recall rights." Respondent points to the fact that Gibson's not only failed to recall her, but placed "No Rehire" in her termination report.

Appellant claims that because Gibson's employee handbook was distributed after respondent began her employment, the handbook does not create contractual rights. Gates v. Life of Montana Ins. Co. (Gates I) (1982), 196 Mont. 178, 183, 638 P.2d 1063. The employee handbook was distributed in June 1979 and was in effect for the remaining four and one-half years of respondent's employment. Gibson's employee handbook contained rules of employee conduct and sanctions for employee misconduct. The handbook contained Gibson's policy for employee benefits, promotions and terminations. As an employer, Gibson's was freely able to enforce employee handbook rules of conduct. It likewise follows that Kerr, as an employee, could reasonably rely on the procedures outlined in Gibson's employee handbook during employment termination.

6

> The circumstances of this case are that the employee entered into an employment contract terminable at the will of either party at any time. The employer later promulgated a handbook of personnel policies establishing certain procedures with regard to terminations. The employer need not have done so, but presumably sought to secure an orderly, cooperative and loyal work force by establishing uniform policies. The employee, having faith that she would be treated fairly, then developed the peace of mind associated with job security. <u>If the employer has failed to follow its own policies, the peace of mind of its employees is shattered and an injustice is done.</u> [Emphasis supplied.]

Gates I, 196 Mont. at 184, 638 P.2d at 1067.

Implicit throughout the respondent's case is the allegation that she was terminated because of her high wages. Kerr was one of Gibson's most senior employees. Her work performance was satisfactory. However, testimony revealed that Gibson's retained or hired less-experienced employees, who then occupied positions respondent had previously held.

The covenant of good faith and fair dealing is implied when objective manifestations by the employer give rise to the employee's reasonable belief that he or she has job security and will be treated fairly. Dare v. Montana Petroleum Marketing Company (Mont. 1984), 687 P.2d 1015, 1020, 41 St.Rep. 1735, 1739. Gibson's repeatedly acknowledged respondent's work as satisfactory through promotions and pay in-

creases. It was reasonable for respondent to believe that she had job security and would be treated fairly.

We hold that sufficient evidence was presented rebutting appellant's claim of economic necessity. Our holding does not foreclose an employer from engaging in legitimate reductions in force necessary to maintain economic vitality of the company. Flanigan, 720 P.2d at 261, 43 St.Rep. at 946.

Therefore, the trial court properly submitted this issue to the jury.

Issue Two

Whether the jury properly awarded compensatory damages to the respondent?

Respondent was awarded $50,995 in lost wages and $8,031 for her interest in the profit sharing plan. Extensive testimony of Kerr's search for employment was presented. Testimony revealed that respondent held numerous temporary and part-time jobs before becoming employed in 1985 at First Security Bank in Bozeman. Kerr presently earns $3.67 per hour at First Security Bank.

Dominque Carestia, an economics expert, testified that respondent's lost wages to July 1989, mitigated by her present income, is $50,995. Carestia projected Kerr's lost wages to 1989, based on respondent's testimony that she

planned to quit Gibson's and raise a family at that time. Additionally, Carestia determined that Kerr would have received $8,031 upon the sale of Gibson's to Chaffin Corporation in May 1984.

Appellant argues that Kerr is not entitled to future damages after May 1984 when Gibson's was sold to Chaffin Corporation. Appellant does not dispute that nearly all of Gibson's employees were retained by Chaffin. Nor does appellant dispute that Chaffin disbursed Gibson's profit sharing account in 1984. If respondent had been employed by Gibson's in May 1984, less than four months after her discharge, clearly she would have received an additional $8,031.

In Gates v. Life of Montana Ins. Co. (Gates II) (Mont. 1983), 668 P.2d 213, 214, 40 St.Rep. 1287, 1289, this Court held that a breach of the implied covenant of good faith and fair dealing has its remedy in tort. Further, this Court has recognized expert testimony on future damages. Graham v. Clark Fork's National Bank (Mont. 1981), 631 P.2d 718, 720, 721, 38 St.Rep. 1140, citing Frisnegger v. Gibson (1979), 183 Mont. 57, 598 P.2d 574, 582:

> . . . Section 27-1-203, MCA, provides that damages may be awarded in a judicial proceeding for detriment resulting after commencement thereof "or certain to result in the future." . . . [I]t has always been the practice in Montana to instruct juries that future damages need only be reasonably certain, and not

9

> absolutely certain as the statute seems
> to imply.

A jury or an expert testifying on the subject must make assumptions to some degree. Frisnegger, 598 P.2d at 582. As an additional precaution, Judge Gary properly instructed the jury not to award speculative damages.

We find that evidence was properly presented to the jury of respondent's future earnings reduced by her present wages under the standard of Graham and § 27-1-203, MCA. The evidence was sufficient to uphold the jury's finding of damages.

Affirmed.

_____
Chief Justice

We concur:

_____
_____
_____
_____
_____
_____
Justices

10