891 F.2d 294
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James L. HALTER, Plaintiff-Appellant,
v.
HOMELITE, DIVISION of TEXTRON, INC., Defendant-Appellee.
 No. 88-3870.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 13, 1989.
Decided Dec. 7, 1989.
 
 Before BROWNING, ALARCON, and CYNTHIA HOLCOMB HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 James Halter filed this diversity action against his former employer, Homelite, Division of Textron, Inc. (Homelite) for breach of the implied covenant of good faith and fair dealing. After Halter presented his evidence on liability to the jury, Homelite moved for a directed verdict. The district court granted the motion and entered judgment against Halter. Halter timely appealed. We have jurisdiction under 28 U.S.C. § 1291 and affirm.
 
 
 3
 * James Halter was hired by Homelite, a subsidiary of Textron Inc., on October 14, 1985, as a Territory Manager in charge of sales of Homelite products in Montana and Northern Wyoming. During the interviewing process, Homelite informed Halter and his wife that the position entailed a significant amount of travel.
 
 
 4
 After a brief training session, Halter began work in late October 1985, subject to a ninety-day probation period ending January 14, 1986. In early November, he received his first performance evaluation. He received favorable ratings and was told to "keep up the good work."
 
 
 5
 In January, 1986, Halter entered a one-year sales incentive program sponsored by Homelite. The program contained express provisions for compensation in case an employee was terminated and specifically stated that it was not a contract for future or continued employment.
 
 
 6
 Later that month, Halter received his second evaluation. His performance ratings declined in many areas. His supervisor, Jim Munson further commented, "You must get out of Billings [Montana] more--2 days a week is not needed." Halter neither received nor requested explanation of this or any other job evaluation form. Halter admits that he continued to spend two days or more in Billings during most weeks even after told not to do so.
 
 
 7
 In February, Munson told Halter to "continue to work hard at what [he] was doing." Munson's supervisor, Jim Bayne, who did not directly supervise Halter, offered oral and written words of encouragement.
 
 
 8
 In early March, Halter received his third evaluation. His ratings had fallen below average in many areas and were noted as a "problem" in the category of New Customer Sales. Halter's number of consignment contracts ranked lowest in his district. Munson noted on the evaluation that Halter's attitude had become negative and combative.
 
 
 9
 Halter refused to undertake the travel Munson told him was necessary to increase his sales. On March 31, Munson instructed all his salespersons, including Halter, to make a final push during the last week of the consignment dealer program and not to come back home to Billings until they had signed at least three new dealers. Halter disobeyed, signing only one dealer and spending six days of that week in Billings.
 
 
 10
 Subsequently, on April 7, 1986, Munson placed a call to Halter's home. Munson asked Halter whether he liked his job. Halter replied that he could not endure the rejection involved. Munson then asked Halter if he was looking for other employment. Halter responded that he was always looking for a new job.
 
 
 11
 On April 11, Halter received a computer-printed "Separation from Service Form" post-marked April 7, 1986 from Homelite's North Carolina office. The form offered no explanation for Halter's termination. After several unsuccessful attempts, Halter contacted Munson by telephone on April 14. After initially denying knowledge of the letter, Munson told Halter that he was discharging him, explaining, "Everything I say you try to fight me on it." The following week, Munson further informed Halter that he was reducing the work force in that area and told Halter he should contact the North Carolina office for written reasons for his termination. Halter wrote the office and received no response. On April 25, Munson sent a letter to the North Carolina office with a list of reasons that included Halter's unwillingness to travel and his negative attitude.
 
 
 12
 Halter filed the present action to recover for Homelite's alleged breach of the implied covenant of good faith and fair dealing.[1] He seeks compensatory damages for lost earnings, investment and benefits, and emotional distress. He also seeks punitive damages.
 
 II
 
 13
 We review the grant of a directed verdict de novo. West Am. Corp. v. Vaughan-Bassett Furniture Co., 765 F.2d 932, 934 (9th Cir.1985). A directed verdict is proper if, viewed in the light most favorable to the nonmoving party, the evidence and inferences drawn therefrom permit only one reasonable conclusion. Brady v. Gebbie, 859 F.2d 1543, 1547 (9th Cir.1988), cert. denied, 109 S.Ct. 1577 (1989); Peterson v. Kennedy, 771 F.2d 1244, 1256 (9th Cir.1985), cert. denied, 475 U.S. 1122 (1986).
 
 
 14
 We likewise review the district judge's construction of the applicable state law de novo. In Re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). Because the forum state is Montana, its law governs the substantive issues in this case. See Olympic Sports Prod. v. Universal Athletic Sales, 760 F.2d 910, 914 (9th Cir.1985), cert. denied sub nom. Whittaker Corp. v. Olympic Sports Products, Inc., 474 U.S. 1060 (1986); Erie v. Tompkins, 304 U.S. 64 (1938).
 
 III
 
 15
 Halter advances three major arguments on appeal.[2] First, he contends that the covenant of good faith and fair dealing applied to his relationship with Homelite. Second, he argues that Homelite's decision to discharge him breached the covenant. Third, he claims that the manner of termination itself also breached the covenant.
 
 
 16
 * In Montana, the covenant of good faith and fair dealing does not arise in every employment relationship. Instead, it is implied only when "objective manifestations by the employer giv[e] rise to the employee's reasonable belief that he or she has job security and will be treated fairly." Dare v. Montana Petroleum Mktg. Co., 687 P.2d 1015, 1020 (Mont.1984). This standard applies to all employment relationships. Rupnow v. City of Polson, 761 P.2d 802, 805 (Mont.1988).
 
 
 17
 In determining whether an employee has a reasonable belief in job security, Montana courts have examined four major factors. We consider them in turn.
 
 
 18
 * Although not dispositive, the length of an employee's service with a given employer is an important, if not primary, factor in determining whether the covenant applies. See Flanigan v. Prudential Federal Sav. & Loan, 720 P.2d 257, 262 (Mont.1986) (length of service is of "paramount importance") (quoting Cleary v. American Airlines, Inc., 168 Cal.Rptr. 722, 729 (App.1980)). However, long tenure is not a prerequisite for application of the covenant. See Crenshaw v. Bozeman Deaconess Hosp., 693 P.2d 487 (Mont.1984) (extending covenant to probationary employees promised future employment). Halter was employed only for six months and was not promised future employment. We find his length of stay insufficient to give rise to a reasonable expectation of job security.[3]
 
 2
 
 19
 Obviously, an employer's statements indicating employment would be permanent may serve as objective manifestations of job security. See Crenshaw, 693 F.2d at 491-92 (employer considered employee qualified for health benefits available only to permanent employees). In this respect, Halter argues that two internal memoranda explaining the Sales Incentive Program for Territory Managers serve as objective manifestations that Homelite would employ him for at least one year.
 
 
 20
 We disagree. The terms of the memoranda specifically contemplate that some employees could be terminated before the program ended. Thus, Homelite gave no assurances of permanent, or even long-term, employment.
 
 3
 
 21
 An employer's repeated acknowledgment that the employee's work is satisfactory may also constitute an objective manifestation of job security. Acknowledgment may be direct or inferred from the employer's actions. See, e.g., Kerr v. Gibson's Products Co. of Bozeman, 733 P.2d 1292, 1293, 1295 (Mont.1987) (acknowledgment by promotion, 11 pay raises and bonus); Dare, 687 P.2d at 1020 (acknowledgment by pay raise and promise of raise in near future).
 
 
 22
 Halter's tenure with Homelite lacked this feature. After the initial positive evaluation given three weeks after Halter was hired, Homelite repeatedly informed Halter that his performance was deteriorating. Specifically, by means of written evaluations[4] and oral comments, Homelite informed Halter that his performance--his poor sales record, his reluctance to undertake the required travel, and his worsening job attitude--left much to be desired. Munson's oral advice in February, 1986 to "continue to work hard at what he was doing," is consistent with the ratings on the evaluations indicating dissatisfaction with Halter's performance. Although Munson's supervisor, who did not directly supervise Halter, offered some words of encouragement, "[o]ccasional compliments by an employer are not sufficient to establish a reasonable expectation of job security." Karell, 779 P.2d at 510.
 
 4
 
 23
 Finally, an employer's handbook providing standard procedures for job termination may give rise to a reasonable belief in job security. In Gates v. Life On Montana Ins. Co., 638 P.2d 1063, 1067 (Mont.1982), the Montana Supreme Court made it clear that even if an employee handbook is not part of an employment contract, statements that the employer will follow certain procedures before termination provide the employee with "the peace of mind associated with job security." Accord, e.g., Stark v. Circle K Corp., 751 P.2d 162, 166 (Mont.1988) (handbook indicating termination should occur only after attempts to cure employee deficiencies); Kerr, 733 P.2d at 1293 (handbook indicating layoffs would be termination without prejudice and employee would retain recall rights). Cf. Rupnow, 761 P.2d at 805 (An employer's failure to provide warnings specified in a personnel policy "are merely considered in light of other evidence when determining whether objective manifestations existed to lead to an employee's reasonable belief in job security.").
 
 
 24
 Homelite's "Salaried Employee Handbook" contains no similar provisions. The vague passage upon which Halter relies--"[employees'] future in Homelite and Textron can grow as much as [they] want ..."--neither sets out, nor even hints at, pretermination procedures to be taken by Homelite. Moreover, it is clarified by the later statement that "[t]he language in this booklet is not intended to create a contract between Homelite or Textron, Inc. or any of its employees for continued employment or continued employee benefits." Thus, the handbook could not provide Halter with a reasonable belief in job security.
 
 
 25
 In sum, we agree with the district court that no reasonable jury would find that Homelite presented Halter with objective manifestations of job security. Accordingly, the covenant of good faith and fair dealing cannot fairly be implied in this case.
 
 B
 
 26
 Because the covenant of good faith and fair dealing did not extend to Halter's relationship with Homelite, we do not address Halter's other two arguments regarding breach thereof.
 
 III
 
 27
 For these reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Halter's complaint also alleged breach of contract. However, the parties agreed to a pretrial order on June 26, 1987 limiting Halter's claim to breach of the implied covenant of good faith and fair dealing
 
 
 [2]
 Halter also argued as a threshold matter that the district court erred in ruling that under Montana law, the existence of the implied covenant of good faith and fair dealing is a question of law for the trial court and not for the jury. See Memorandum Opinion at 5
 However, because the district judge also ruled the facts were insufficient to permit a jury to find that the covenant existed, Id. at 5, 9, we find it unnecessary to address the issue.
 
 
 [3]
 Halter adds that his four-year stint with Bostitch constituted an objective manifestation of job security because Bostitch is also a division of Textron, Inc. However, Halter's employer at the time of the relevant discharge was Homelite
 Objective manifestations of job security must come from the employer.... The employer is responsible for the employee's performance and is in the best position to evaluate it. The employer has the power to rebuke or reward the employee and is the only one with the power to create job security.
 Karell v. American Cancer Soc'y, Montana Div., 779 P.2d 506 at 510 (Mont.1989) (emphasis added).
 
 
 [4]
 Halter attempts to minimize the impact of the evaluations by asserting that they were never explained to him. This argument is frivolous because the evaluations clearly indicate that Homelite was becoming increasingly dissatisfied with Halter's performance