Blanca L. ITURBE and Angel
Iturbe, Plaintiffs,

v.

WANDEL & GOLTERMANN,
TECHNOLOGIES, INC.,
Defendant.

Civ. A. No. 1:90CV00242.

United States District Court,
M.D. North Carolina,
Durham Division.

May 23, 1991.

## MEMORANDUM OPINION

GORDON, Senior District Judge.

Plaintiff Blanca L. Iturbe (Iturbe), a woman of Chilean birth, was fired from her job at defendant Wandel & Goltermann's plant in Research Triangle Park, North Carolina. She sued, charging violations of Title VII of the Civil Rights Act of 1964, and attached pendent state claims of breach of contract and wrongful discharge, and a separate claim for attorneys' fees. Before the court is a motion by Wandel & Goltermann to dismiss the state law claims. For the reasons stated, the court will grant Wandel & Goltermann's motion to dismiss the breach of contract claim and the request for attorneys' fees. The wrongful discharge claim is made pursuant to the North Carolina Supreme Court's recent decision in *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989), and the court concludes that Iturbe has stated a claim under North Carolina law.

## BACKGROUND

■ For purposes of this motion to dismiss, the court must accept as true the factual allegations in Iturbe's verified complaint and the inferences that can reasonably be drawn therefrom. 5A Wright & Miller, *Fed. Pract. & Proc.: Civil* 2d, § 1357, nn. 10, 24 and accompanying text (1990). Iturbe worked for Wandel & Goltermann in New Jersey, as group leader of final assembly. In 1984, Wandel & Goltermann announced it was going to open a new plant in Research Triangle Park, North Carolina, and offered Iturbe a job there if she would move down. She was told she would have a "continuing job with the company if she moved to North Carolina and that she would continue to grow with the company as the company grew." Amended Complaint, para. 11. She agreed to move herself and her family. At the North Carolina plant, she was one of three final assemblers, a valuable employee with a good job performance record. Iturbe's husband, Angel, was hired by the company as a machinist. (He had not worked for Wandel & Goltermann in New Jersey.)

All went well until February, 1989, when the plant manager called Angel Iturbe in to his office and told Angel he would be laid off. Angel Iturbe protested, whereupon the plant manager told him that either he or his wife would be fired. Four days later, Blanca L. Iturbe was fired. At the time, Wandel & Goltermann had a written procedure for layoffs in which job performance was the primary factor in determining which employees would be laid off and seniority was a determining factor in cases where job performance was considered to be equal. Amended Complaint, para. 18. When Iturbe was fired, a male of American birth in her department was not fired, although her job performance was as good as his and she had substantially more seniority than he. Amended Complaint, para. 20.

Adding insult to injury, Angel was shortly thereafter transferred to his wife's former department and told to do her job. Later, he was transferred back to his old job, and other people were hired to do Iturbe's work.

## DISCUSSION

### A. BREACH OF CONTRACT

Iturbe alleges that she had a promise from Wandel & Goltermann that her job would be "continuing", and that she would retain a job as long as her work was satisfactory and the company was in need of her skills. Amended Complaint, para. 11. Wandel & Goltermann allegedly breached this contract when it fired her.

Iturbe freely admits that North Carolina is a traditional "employment at will" state. If an employment contract contains no provision concerning the duration of the employment or the means by which it may be terminated, such a contract is terminable at the will of either party, irrespective of the quality of performance by the other party. *Still v. Lance*, 279 N.C. 254, 259, 182

S.E.2d 403, 406 (1971). This is true even if the contract expressly refers to the employment as a "regular, permanent job". *Id.*

■ However, a line of North Carolina cases has recognized an exception to this rule: an agreement of permanent employment can be enforced when the employee has provided additional consideration beyond the usual obligation of service.

One variant of this exception is when the employee is injured through the negligence of the company, and the employer and employee reach an agreement that the employee will drop all tort claims against the company in exchange for a promise of permanent employment. The North Carolina Supreme Court has several times found such promises binding. *Dotson v. F.S. Royster Guano Co.*, 207 N.C. 635, 178 S.E. 100 (1935); *Stevens v. Southern Railway Co.*, 187 N.C. 528, 122 S.E. 295 (1924); *Fisher v. John L. Roper Lumber Co.*, 183 N.C. 485, 111 S.E. 857 (1922).

A more recent variation of the exception is when the employee gives up a job and moves to a new city to start work with a new employer. The development of this variation can be traced through the cases of *Tuttle v. Kernersville Lumber Co.*, 263 N.C. 216, 219, 139 S.E.2d 249, 251 (1964) (dictum that additional consideration can make an agreement for a "permanent job" binding) and *Burkhimer v. Gealy*, 39 N.C.App. 450, 454, 250 S.E.2d 678, 682, *disc. rev. denied*, 297 N.C. 298, 254 S.E.2d 918 (1979) (dictum that additional consideration includes moving residences to take a new job). In *Sides v. Duke University*, 74 N.C.App. 331, 345, 328 S.E.2d 818, 828, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985), the court held that the additional consideration of leaving a job in Michigan to take a job in North Carolina removed the plaintiff's contract for "permanent" employment from the terminable at will rule.

The most recent discussion of this particular exception to the employment at will rule would appear to be *Buffaloe v. United Carolina Bank*, 89 N.C.App. 693, 366 S.E.2d 918 (1988), a case similar to the one before the court today. There, the plaintiff moved from Charlotte to Lumberton in order to receive a promotion with the same employer. The court held this was not sufficient additional consideration to remove the case from the employment-at-will doctrine. *Id.* at 696–97, 366 S.E.2d at 921.

The Court of Appeals in *Buffaloe* distinguished *Sides v. Duke University, supra*, by noting that in *Sides*, the plaintiff had left a job with a different employer in Michigan to take a new job in North Carolina, thus forgoing career opportunities. In *Buffaloe*, the plaintiff did not forgo any other employment opportunities, and he merely moved in order to receive a promotion; this was insufficient consideration to support the promise.

■ *Buffaloe* controls in the case today. Iturbe did not give up any other employment opportunities; she moved from New Jersey to North Carolina in order to retain the same job with the same company. Thus, any promise Wandel & Goltermann made to Iturbe was *nudum pactum:* the consideration she provided in return for it was insufficient to form a binding contract for permanent employment. Since no contract for permanent employment existed, Wandel & Goltermann had nothing to breach. The court finds that Iturbe's breach of contract claim fails to state a claim upon which relief can be granted, and will dismiss it.

B. THE WRONGFUL DISCHARGE CLAIM

Iturbe additionally claims she was wrongfully discharged by Wandel & Goltermann. Relying on *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989), her complaint lists two separate grounds for the claim. First, her termination violated public policy against sex and ethnic discrimination; and second, she was discharged in bad faith because the basis for her discharge was her marital relationship with Angel Iturbe.

i. *Wrongful Discharge in Violation of Public Policy*

Iturbe directs the attention of the court to North Carolina General Statute § 143–422.2 (1990):

It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination, or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

Iturbe then cites the *Coman* case, which held there was a public policy exception to the employment at will doctrine, and urges that her discharge, which she alleges was due to her sex or national origin, violated North Carolina public policy. In *Coman v. Thomas Mfg. Co.*, the North Carolina Supreme Court asked whether it "should adopt a public policy exception to the employment-at-will doctrine." 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989). The answer was "yes".

The *Coman* opinion borrowed language from *Sides v. Duke University*, 74 N.C.App. 331, 328 S.E.2d 818, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985):

We approve and adopt the following language from *Sides:*

[W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.

325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989) (citation omitted).

The *Coman* case and the public policy exception it announced have been discussed at length in two North Carolina cases. Both of them confirm that, in the case before the court today, plaintiff Iturbe has stated a cause of action. In *McLaughlin v. Barclays American Corp.*, 95 N.C.App. 301, 382 S.E.2d 836, *cert. denied*, 325 N.C. 546, 385 S.E.2d 498 (1989), the plaintiff was fired for defending himself in an altercation with a subordinate. However, he could point to no particular public policy protecting his right to self-defense. Since no public policy was violated in his termi-

nation, the plaintiff failed to state a claim for wrongful discharge.

The state Court of Appeals recently handed down a decision in the case of *Amos v. Oakdale Knitting Co.*, 102 N.C.App. 782, 403 S.E.2d 565 (1991) (designated for publication). There, the plaintiffs were told their wages would be reduced to $2.18 per hour, below the statutorily required minimum of $3.35 per hour. They were told by management they could accept the lower wages or be fired. Plaintiffs instead quit and sued for wrongful discharge.

Without question, the minimum wage law was the public policy of North Carolina. At 785, 403 S.E.2d at 567 (citing N.C.Gen.Stat. § 95-25.1(b) ("The public policy of this State" includes the requirement of minimum wages). Thus, the criterion the plaintiff in *McLaughlin* failed was met here. However, the state legislature, in announcing the public policy of the state, also provided a remedy for employees in the event an employer failed to comply with the mandates of the law. N.C.Gen. Stat. § 95-25.22 (employee can maintain action in North Carolina state courts to recover unpaid minimum wages). The legislature also provided a remedy should an employer retaliate against an employee for protecting his or her rights. N.C.Gen.Stat. § 95-25.20(a).

Thus, the plaintiffs in *Amos* had ample remedies created by statute. "The legislature having expressed its intent, ... we decline to extend the public policy exception to the employment at will doctrine to afford a cause of action in addition to that provided by statute." At 786, 403 S.E.2d at 567-68. The court continued, "[m]oreover, limitation of the public policy exception to situations where there is no statutory redress finds support in other jurisdictions." *Id.* (citing *Wehr v. Burroughs Corp.*, 438 F.Supp. 1052 (E.D.Pa.1977), *aff'd as modified*, 619 F.2d 276 (3rd Cir. 1980)).

■ *Amos* thus clarifies the reach of the public policy exception to the employment at will doctrine created in *Coman,* and a

two-part test has been developed: (1) the discharge must violate some well-established public policy, and (2) there must be no North Carolina statutory remedy to protect the interest of the aggrieved employee or society. *Amos,* 102 N.C.App. at 787, 403 S.E.2d at 568.

■ Turning to the case before the court today, Iturbe charges her firing was for reasons of her sex or national origin. Following the analysis used in *Coman, McLaughlin,* and *Amos,* the court looks for statutory proscription against discrimination for such reasons, and finds it in N.C.Gen.Stat. § 143–422.2, quoted above. That statute specifically declares it is the "public policy of this State" to prohibit discrimination by reason of sex or national origin, among other things. Next, it is observed that, though § 143–422.2 expresses the public policy of North Carolina, the state legislature provided no statutory remedy for employees when that public policy was violated. Thus, Iturbe has met the criteria articulated in *Coman* and *Amos* to maintain a cause of action for wrongful discharge, because she alleges her termination was for reasons of her national origin or sex.

ii. *Wrongful Discharge in Bad Faith*

The *Coman* decision did not stop at a public policy exception to the employment at will rule. Rather, the North Carolina Supreme Court went on to a discussion of the proscriptions against discharging an employee in bad faith. 325 N.C. at 176–77, 381 S.E.2d at 448. Iturbe maintains she has stated a cause of action that her discharge was in bad faith, because it was due to her marital relationship with Angel Iturbe.

The language in *Coman* supporting the bad faith argument of wrongful discharge was dictum. But it was powerful dictum. The North Carolina Supreme Court cited several cases and assorted academic commentaries to support the discussion. It also specifically refuted the dissent's arguments against the bad faith exception. 325 N.C. at 177 n. 3, 381 S.E.2d at 448 n. 3.

The North Carolina Court of Appeals in *McLaughlin v. Barclays American Corp.* clearly believed *Coman* reaffirmed the rule that North Carolina courts "do not give their imprimatur to employers who discharge employees in bad faith." 95 N.C.App. 301, 306, 382 S.E.2d 836, 840. The Fourth Circuit accepted that *Coman* announced a bad faith exception to the employment at will doctrine: "What", the court asked, "are the contours of [*Coman*'s] 'bad faith' exception?" *Harrison v. Edison Bros. Apparel Stores, Inc.,* 924 F.2d 530, 533 (4th Cir.1991); *Accord* Note, "*Coman v. Thomas Mfg. Co.:* Recognizing a Public Policy Exception to the At–Will Employment Doctrine," 68 N.C.L.R. 1178, 1190 (1990) ("In addition to its expansion of the public policy exception, the *Coman* court stated that bad faith conduct is not acceptable in commercial relationships.")

■ It is concluded that discharge from employment in bad faith can state a claim in North Carolina. It is also concluded that the allegations contained in Iturbe's amended complaint state such a claim, but not for the reason Iturbe suggests.

The court in *Coman* was not extremely specific about what it meant by a "bad faith" exception, but the state Court of Appeals told us what bad faith was not, in *McLaughlin,* where the employee was fired for defending himself against a physical attack by a subordinate. The employee's superiors "displayed virtual indifference" to his requests for help in dealing with the subordinate. The investigation of the physical attack "was shallow and perfunctory, and [the] dismissal of Mr. McLaughlin, who had no culpability for the altercation, was irrational. We cannot say, however, that defendants' actions amounted to bad faith." 95 N.C.App. at 306, 382 S.E.2d at 840.

If Iturbe was indeed fired due to her marriage to Angel Iturbe, Wandel & Goltermann may have been "irrational", "indifferent", "illogical", or "arbitrary". *McLaughlin,* 95 N.C.App. at 306–07, 382 S.E.2d at 840. But that does not mean it acted in bad faith.

However, at least two of the cases cited in *Coman* to explain the bad faith exception to the employment at will doctrine dealt with employees who were fired in violation of written policy manuals. In *Kerr v. Gibson's Products Co.*, 226 Mont. 69, 733 P.2d 1292 (1987), Gibson's employee handbook outlined its termination procedure. The plaintiff argued that Gibson's failed to follow the written procedure when she was fired. *Id.* at 72, 733 P.2d at 1294. The court wrote that the "covenant of good faith and fair dealing is implied when objective manifestations by the employer [in the form of an employee handbook] give rise to the employee's reasonable belief that he or she has job security and will be treated fairly." *Id.* at 73, 733 P.2d at 1294. The evidence was sufficient to go to the jury. And in *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980), the court wrote that "[t]he second factor of considerable significance [in concluding the plaintiff pleaded a viable cause of action] is the expressed policy of the employer ..., set forth in regulation 135–4 [of an employee manual]. This policy involves the adoption of specific procedures for adjudicating employee disputes such as this one." *Id.* at 455, 168 Cal.Rptr. at 729. The policy was not followed in the plaintiff's termination. These cases were cited in *Coman* to support the discussion of the bad faith exception to the employment at will doctrine. 325 N.C. at 177, 381 S.E.2d at 448.

■ Iturbe alleged, in paragraph 18 of her amended complaint, that Wandel & Goltermann "had a written procedure for layoffs in which job performance was the primary factor in determining which employees would be laid off and seniority was a determining factor in cases where job performance was considered to be equal."[1] Iturbe's job performance was as good as that of a coworker who was not fired, and she had substantially more seniority than the coworker. Amended Complaint, para. 21. Construing Iturbe's pleading so as to

do substantial justice, F.R.Civ.P. 8(f), the court finds that she has stated a claim that her termination was in violation of this written procedure. This is the type of bad faith discharge claim that the court believes the *Coman* and *McLaughlin* cases recognized.

## C. ATTORNEYS' FEES

■ Iturbe's sixth claim for relief prayed for attorneys' fees for the foregoing causes of action. The general rule in North Carolina is that "in the absence of statutory authority therefor, a court may not include an allowance of attorneys' fees as part of the cost recoverable by the successful party to an action or proceeding." *Hicks v. Albertson*, 284 N.C. 236, 238, 200 S.E.2d 40, 42 (1973). Iturbe has not cited any North Carolina statute which would allow her to recover attorneys' fees under her breach of contract and wrongful discharge claims. Another claim in the amended complaint applies to Angel Iturbe, and includes in it a request for attorneys' fees.

Iturbe's first two claims were based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Title VII allows for the recovery of attorneys' fees and costs by prevailing parties in suits brought under Title VII. 42 U.S.C. § 2000e–5(k). It is accepted that "[w]here several claims arise out of a common factual core or are based on related legal theories ... prevailing plaintiffs may be entitled to compensation for time expended on [non-Title VII] claims." *Zabkowicz v. West Bend Co.*, 789 F.2d 540, 551 (7th Cir.1986); *see also Dezell v. Day Island Yacht Club*, 796 F.2d 324, 330 (9th Cir.1986); *Seals v. Quarterly County Ct. of Madison Cty., Tenn.*, 562 F.2d 390, 392–94 (6th Cir.1977). If Iturbe is the prevailing party in this litigation, she may be able to recover attorneys' fees for all her claims, not just those regarding Title VII.

---

1. Since the court today only rules on the sufficiency of Iturbe's complaint, the court accepts as true Iturbe's allegations that the written procedure existed, and that it somehow governed

her employment relation with Wandel & Goltermann, or her termination. *Compare Buffaloe v. United Carolina Bank,* 89 N.C.App. 693, 696, 366 S.E.2d 918, 920 (1988).

Since the sixth claim does nothing not covered elsewhere in the complaint, it will be dismissed.

## CONCLUSION

Wandel & Goltermann's motion to dismiss Iturbe's breach of contract claim (claim 3) and the attorneys' fee claim (claim 6) will be granted. Neither states a claim upon which relief can be granted. Wandel & Goltermann's motion to dismiss the wrongful discharge claim (claim 4) will be denied.