JUSTICE WEBER
delivered the Opinion of the Court.
This appeal arises from a verdict following a jury trial in the Thirteenth Judicial District, Yellowstone County, Montana. The jury returned a verdict for plaintiff, finding that defendant had violated the covenant of good faith and fair dealing in its discharge of Mr. Heltborg. Defendant appeals. We reverse and remand.
The issues are:
1. Did the District Court err in allowing plaintiff’s expert witness to render legal conclusions as to the existence and breach of an implied covenant, and as to whether defendant was negligent?
2. Did the District Court err in instructing the jury on the issue of negligence, and in submitting a special verdict form which instructed the jury to consider whether Modern had negligently breached the covenant of good faith and fair dealing?
*26 3. Did the District Court err in excluding Heltborg’s written statement to the Social Security Administration that he was incapable of fulfilling the physical and mental requirements of his job?
4. Did the District Court err in denying defendant’s motion for a judgment notwithstanding the verdict?
Modem Machinery (Modem) is a heavy equipment dealer based in Missoula, Montana, and is a subsidiary of Washington Corporation. In the late 1970’s the Modem stores began experiencing financial difficulties. These economic problems continued for a period of approximately eight years, resulting in losses to the company in excess of twelve million dollars. During this time several of Modern’s stores were closed, including the stores in Phoenix and Tucson, Arizona, Gillette, Wyoming, and Kalispell, Montana.
In 1986 the manager of the Billings, Montana store was informed that he must attempt to make the store profitable. The Billings store had reduced its employees by half in 1981, yet it had lost in excess of $100,000 for each of the years 1983 through 1985. Trial testimony established that in 1986 the store again lost over $100,000 from ongoing operations, and was essentially insolvent or bankrupt for the year 1986.
Mr. Chris Heltborg was employed in the Billings store as a service manager. He originally began working for Modern as a mechanic, but was promoted to service manager. When the business was healthy Mr. Heltborg had supervised up to eighteen mechanics. By 1986 Mr. Heltborg was supervising only three mechanics. Mr. Heltborg had some physical disabilities, including diabetes, and congestive heart failure. He had also suffered a stroke in 1985.
On April 30, 1986, Mr. Heltborg’s employment with Modern was terminated. At 9:00 a.m., Mr. Heltborg and another long-term employee, Darrell Imhoff, were called into the office of Jerry Gibson, the store manager. Mr. Gibson simply informed them that they were terminated. Mr. Heltborg received no prior notice of this and no severance pay. At the time of the termination, Mr. Heltborg had been employed by Modern for twenty-two years.
Modem did not rehire anyone to fill Mr. Heltborg’s position. Mr. Gibson testified that a mechanic, Paddy Gwin, who had been employed by Modem for twenty-seven years, became the “working foreman.” Mr. Gwin and two other employees assumed Mr. Heltborg’s work.
*27 Four months after his termination, Mr. Heltborg and his wife were asphyxiated in their home due to a defective fireplace door. Mrs. Heltborg survived. Mr. Heltborg died after being hospitalized. Mrs. Heltborg, as representative of her husband’s estate, brought suit against Modern, alleging breach of the implied covenant of good faith and fair dealing, negligence in the termination decision, and wrongful discharge. Upon Mr. Heltborg’s termination, insurance coverage, including hospitalization insurance and $50,000 of life insurance coverage, had ended. Thus Mrs. Heltborg requested damages for lost wages, medical bills, and for the terminated life insurance coverage.
The District Court dismissed the wrongful discharge claim on Modem’s motion for summary judgment. The remaining claims were tried before a jury, which returned a verdict for plaintiff on the breach of the implied covenant of good faith and fair dealing. The jury awarded damages in the amount of $170,608. Following trial, Modem moved for judgment notwithstanding the verdict, and for a new trial. Both motions were denied. Modern appeals.
I
Did the District Court err in allowing plaintiff’s expert witness to render legal conclusions as to the existence and breach of an implied covenant, and as to whether defendant was negligent?
At trial, plaintiff presented an expert witness, Mr. Alan Brown, an expert in employment relations, to testify that defendant was negligent in its reduction in force, that the reduction in force was not legitimate, and that defendant breached an implied covenant of good faith and fair dealing.
On direct examination, plaintiff’s counsel established Mr. Brown’s training and qualifications and knowledge of the facts surrounding Mr. Heltborg’s termination. Mr. Brown’s testimony stated commonly accepted methods of conducting a legitimate reduction in force and commonly accepted methods of terminating an employee. Counsel then elicited the following testimony from Mr. Brown:
“Q. Now, I would like to summarize, Mr. Brown. Given the facts and the testimony that you have reviewed in this case, is it your opinion that Modern Machinery conducted a legitimate reduction in force when it fired two high paid long-time employees?
“A. It is my opinion that they did not have a legitimate reduction in force.
“Q. Based on your investigation and reading, as well as your education and experience, do you have an opinion as to whether or *28 not Modern Machinery had sufficient reliable facts upon which they could reasonably reach the decision to terminate Chris Heltborg?
“A. I have an opinion.
“Q. What is it?
“A. That they did not.
“Q. Assuming that there was, in fact, an implied obligation of good faith and fair dealing between the Defendant and Chris Heltborg, do you have an opinion as to whether or not Modem Machinery complied with that obligation?
“A. I have an opinion.
“Q. What is it?
“A. They did not.
“Q. Do you have an opinion as to whether or not Modem Machinery violated the standard of care of a reasonably prudent employer and what they would follow regarding a legitimate right of the employee of 22 years service?
“A. Yes, I have an opinion.
“Q. What is that?
“A. They didn’t exercise reasonable care.
“Q. Was Modem Machinery, in your opinion, negligent in the manner in which they terminated Chris Heltborg?
“A. Yes. My opinion is they were.
“Q. Do you have an opinion as to whether or not the breach of these obligations was the cause of the loss of Chris Heltborg’s employment and his associated benefits of employment, including insurance?
“A. Yes. It is my feeling that this is a direct cause of his loss of these benefits.
“MR. MOLLOY: Your Honor, I have no more questions.”
Similar responses were elicited from Mr. Brown at other intervals in his testimony. Defendant contends that this testimony invaded the province of the jury, in effect instructing the jury how to decide the case. Defendant also contends this testimony exceeds the scope of expert testimony previously approved by this Court.
In our analysis of this issue we begin by noting relevant Montana Rules of Evidence, which provide:
“Rule 702. Testimony by experts.
“If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, *29 training, or education may testify thereto in the form of an opinion or otherwise.
“Rule 704. Opinions on ultimate issue.
“Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.”
The Commission Comments to Rule 704, M.R.Evid., state that “the Commission intends this rule to follow the existing Montana practice of not allowing the witness to give a legal conclusion or to apply the law to the facts in his answer.”
Montana’s Rule 704 is identical to Federal Rule 704. The Advisory Committee Note to the federal rule states:
“Advisory Committee’s Note
“The basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact. In order to render this approach fully effective and to allay any doubt on the subject, the so-called “ultimate issue” rule is specifically abolished by the instant rule.
“The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, ‘Did T have capacity to make a will?’ would be excluded, while the question, ‘Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?’ would be allowed. McCormick § 12.”
Rules of Evidence (1972), 56 F.R.D. 183, 284-5.
The Fifth Circuit in U.S. v. Lueben (5th Cir. 1987), 812 F.2d 179, aff’d on rehearing, 816 F.2d 1032 (1987), recently explained this illustration as follows:
“The two questions quoted above illustrate the major surviving exception to the rule that expert opinions on an ultimate issue are admissible: an expert may not express an opinion on a conclusion of law. This court used this exception to uphold the exclusion of the *30 expert testimony in the two cases relied upon by the district court in excluding the expert testimony in this case. In Matthews v. Ashland Chemicals, Inc., this court stated that the expert’s answer to the hypothetical question posed in that case would simply tell the jury what result to reach and would allow the expert to voice a legal conclusion as to the proximate cause of the injuries suffered by the plaintiff in that case. See 770 F.2d [1303] at 1311 [(5th Cir. 1985)]. Similarly, in Owen v. Kerr-McGee Corp., this court upheld the exclusion of expert testimony as to the legal cause of an accident. See 698 F.2d [236] at 240 [(5th Cir. 1983)].”
Lueben, 812 F.2d at 184.
Lueben was accused of making materially false statements to a savings and loan institution, in violation of 18 U.S.C. §§ 1001 and 1014. The trial court disallowed testimony by an expert witness in regard to whether certain false statements would have “the capacity to influence” a loan officer. In reversing this ruling the appellate court concluded that this constituted an opinion on a factual issue rather than the legal question of whether statements were material, and was therefore admissible. Lueben, 812 F.2d at 184.
We adopt the above-quoted reasoning of the Fifth Circuit on this issue, although we recognize that on rehearing the Fifth Circuit vacated this portion of the opinion by concluding that the materiality of the false statements was a legal question for the court to decide. Lueben, 816 F.2d at 1033.
This distinction between testimony which constitutes a legal conclusion and that which is a factual conclusion has been decisive in court decisions ruling on the scope of expert testimony. See e.g., Specht v. Jensen (10th Cir. 1988), 853 F.2d 805, cert. denied, 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989) (opinion by expert attorney on whether defendants’ conduct involved a “search” within the meaning of the Fourth Amendment was a legal conclusion and should not have been allowed); Owen v. Kerr-McGee Corp. (5th Cir. 1983), 698 F.2d 236 (opinion by expert as to legal cause of accident was properly disallowed); Marx & Co., Inc. v. Diners’ Club, Inc. (2nd Cir. 1977), 550 F.2d 505, cert. denied, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977) (trial court erred in allowing attorney expert to give legal opinion construing contract terms at issue).
Clearly an expert may testify to an ultimate issue of fact and we have previously so held. See, e.g., Scofield v. Estate of Wood (1984), 211 Mont. 59, 683 P.2d 1300 (court properly allowed highway patrol *31 man to testify as to cause of accident); Wollaston v. Burlington Northern, Inc. (1980), 188 Mont. 192, 612 P.2d 1277 (court properly allowed highway patrolman to testify as to cause of accident); State v. Petko (1978), 177 Mont. 229, 581 P.2d 425 (court properly allowed expert to testify that substance was marijuana even though this was an ultimate factual issue). We emphasize, however, that there is a distinction between testimony on the ultimate factual issue, and testimony on the ultimate legal issue.
To clarify, had Modem provided its employees with a handbook or policy requiring advance notice before a termination, and requiring severance pay, an expert could testify to factual issues of whether the employer followed its own policies. Nonetheless, the expert could not follow this testimony with a legal conclusion on whether the employer violated the covenant of good faith and fair dealing.
This Court limited the scope of expert testimony in Hart-Anderson v. Hauck (1988), 230 Mont. 63, 748 P.2d 937, decided in January 1988, which was over a year before the present case went to trial. In Hart-Anderson a Billings attorney testified that defendant was 100% negligent, and that plaintiff was not negligent. He further testified that the insurance agents had violated three specific subsections of the Unfair Claims Settlement Practices Act in their handling of plaintiffs claim. On appeal the plaintiff challenged the propriety of the testimony. The Hart-Anderson analysis quoted approvingly from Marx, as follows:
“[S]uch testimony ‘amounts to no more than an expression of the [witness’] general belief as to how the case should be decided.’ McCormick on Evidence, § 12 at 26-27. The admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case. McCormick on Evidence, § 12 at 27. It is for the jury to evaluate the facts in the light of the applicable rules of law, and it is therefore erroneous for a witness to state his opinion on the law of the forum.” (Citation omitted.)
The court further cautioned that,
“[W]e must be especially careful not to allow trials before juries to become battles of paid advocates posing as experts on the respective sides concerning matters of domestic law.”
Hart-Anderson, 748 P.2d at 942-43.
This Court reversed and remanded, concluding that the repeated legal conclusions simply instructed the jury how to decide the case and were highly prejudicial. The present case is directly comparable *32 to Hart-Anderson. In the present case, just as in Hart-Anderson, there was an extended series of questions on the basic legal issues to be determined by the jury.
The testimony by Mr. Alan Brown constituted a legal conclusion on the precise issue presented to the jury, that is, whether defendant had breached the covenant of good faith and fair dealing. Moreover, he was allowed to state his opinion that defendant was negligent in carrying out its reduction in force and that such reduction was not legitimate; that defendant violated the standard of care of a reasonably prudent employer; that defendant was negligent in its termination of Heltborg; and that breach of these obligations was a direct cause of Mr. Heltborg’s loss of benefits. Mr. Brown’s testimony was extensive, and he repeatedly stated legal conclusions which amounted to instructing the jury on how to decide the case.
We recently addressed the scope of expert opinion in Mahan v. Farmer’s Union Central Exchange, Inc. (1989), 235 Mont. 410, 768 P.2d 850, [46 St. Rep. 96]. Mahan involved charges of age discrimination and breach of the implied covenant of good faith and fair dealing. Mr. Mahan was discharged from Farmers Union Central Exchange, Inc. when he was sixty years old. The expert witness in Mahan, the same Alan Brown as in the present case, was allowed to testify as to whether the company complied with or violated its own policies, in accord with our previous decisions of Crenshaw v. Bozeman Deaconess Hospital (1984), 213 Mont. 488, 693 P.2d 487, and Flanigan v. Prudential Federal Savings & Loan (1986), 221 Mont. 419, 720 P.2d 257.
However, in Mahan we also discussed the propriety of expert testimony by an expert statistician. In remanding the case, we stated:
“In any event, we affirm the position of the District Court that on retrial the statisticians may testify that their statistical tests show or do not show patterns of discrimination based on age, but may not testify to the ultimate conclusion that age discrimination in his termination was or was not exercised against Wayne Mahan in this case. The jury should be the final arbiter of that issue. Rule 704, M.R.Evid.” (Emphasis supplied.)
Mahan, 768 P.2d at 857.
We hold that in the present case the trial court committed reversible error in allowing Mr. Brown to state legal conclusions on the very *33 issues to be decided by the jury. We thus reverse and remand to District Court for new trial.
Appellant raises other alleged errors which we will address for the court’s guidance on retrial.
II
Did the District Court err in instructing the jury on the issue of negligence, and in submitting a special verdict form which instructed the jury to consider whether Modern had negligently breached the covenant of good faith and fair dealing?
At trial and on appeal Modem has raised issues involving the application of a negligence theory to an employment termination. As previously noted, plaintiff’s complaint alleged a breach of the covenant of good faith and fair dealing in Count I, negligence in Count II, and wrongful discharge in Count III.
Under Count II, plaintiff’s complaint alleged that Modem was negligent in failing to exercise ordinary and reasonable care in investigating the need to terminate Mr. Heltborg. In its answer, Modem asserted the affirmative defense to this allegation that it had employed a legitimate reduction in force as a result of economic conditions.
Modem moved for summary judgment on all three counts listed in the complaint. In its brief in support of summary judgment, Modern contended that negligence in the employment context is only actionable in conjunction with a breach of the covenant. Moreover, the pretrial order listed as an issue of law whether Montana recognizes a separate and distinct tort of negligence as opposed to negligently violating the covenant of good faith and fair dealing.
At trial Modern objected to the following jury instructions which were given by the court:
“Instruction No. 18:
“When the legal duty to act in good faith exists in the employment relationship, as it does in this case, then there is a duty imposed upon the employer to exercise reasonable care in carrying out decisions concerning employment. This means that there is a duty on the part of the employer to use reasonable care under the circumstances in carrying out its business decision-making.
“Instruction No. 19:
“A reduction in force can constitute a just cause for termination of employment. However, you are instructed that the employer’s right to reduce its personnel does not excuse its obligation to act fairly and *34 in good faith or to use ordinary and reasonable care in the process and manner of termination of employment.”
Modern offered the following instructions, which were refused:
“Instruction No. 28:
“An employer who acts in good faith on an honest but mistaken belief that the discharge of an employee was warranted by a legitimate business reason has not committed a breach of the covenant of good faith and fair dealing.
“Instruction No. 26:
“In determining whether Modem . . . negligently terminated . . . employment, you are not to consider whether Modern Machinery made a correct decision or a good management decision. Modern Machinery has the absolute authority to make managerial decisions relating to the termination of employees to maintain the economic vitality of its company, regardless if those managerial decisions are good decisions or poor decisions.”
Modem contends that the given instructions militate against previously stated policies that an employer must have “wide latitude in deciding whom it will employ,” Gates v. Life of Montana (1982), 196 Mont. 178, 184, 638 P.2d 1063, 1067, and that an employer may engage in “legitimate reductions in force necessary to maintain the economic vitality of the company,” Flanigan, 720 P.2d at 261. Modern contends that there is no duty to use reasonable care in the process and maimer of termination. Additionally, Modem contends that imposing a duty of reasonable care upon Modern in its decision making suffers from the lack of any definable standard of care.
Modern contends that an employer should not be liable for megligence in making business decisions, including reduction in force decisions. It contends this would be an extension of negligence liability in the employment context. It contends this Court has previously affirmed a finding of negligence by an employer in only two instances: 1) where the employer violates its own -written termination policies, as in Flanigan, and 2) where an employer fails to investigate allegations of misconduct before terminating an employee for cause, as in Crenshaw.
This Court first allowed a negligence cause of action in an employment termination case in Crenshaw. In Crenshaw we concluded that the trial court did not err in giving a jury instruction defining negligence. Crenshaw involved allegations that the employer was negligent in not following its own employee handbook policies, and in *35 not properly investigating charges against the employee. These failures were in conjunction with several acts by the employer which were characterized as acts of “bad faith,” such as making false charges against the employee and notifying the local job service of such charges. Crenshaw was later cited for the proposition that negligence forms a proper basis for recovery in an employee termination case. See Flanigan, 720 P.2d at 263; Rupnow v. City of Polson (1988), 234 Mont. 66, 72, 761 P.2d 802, 806; Prout v. Sears, Roebuck & Co. (1989), 236 Mont. 152, 157, 772 P.2d 288, 291, 46 St.Rep. 257, 261.
In Flanigan, the allegations of negligence were joined with allegations of age discrimination, and ulterior motives on the part of the employer in firing the employee. In both Crenshaw and Flanigan the alleged negligence was in conjunction "with allegations properly forming a basis for a breach of the covenant. The negligence issues were not essential in either Crenshaw or Flanigan.
In Gates I this Court stated:
“These cases emphasize the necessity of balancing the interests of the employer in controlling his work force with the interests of the employee in job security. In adopting the doctrine of good faith in employment contracts the courts did not seek to infringe upon the interests of the employer, but recognized that:
“‘... an employer is entitled to be motivated by and to serve its own legitimate business interests; that an employer must have wide latitude in deciding whom it will employ in the face of the uncertainties of the business world; and that an employer needs flexibility in the face of changing circumstances.’” (Citation omitted.)
Gates, 638 P.2d at 1066-67.
In Flanigan we stated that a long-term employee’s expectation of continued employment “does not foreclose an employer from engaging in legitimate reductions in force necessary to maintain the economic vitality of the company.” Flanigan, 720 P.2d at 261.
In the present case, the instructions given allowed the jury to decide the legitimacy of a reduction in force and whether it was carried out in a negligent manner. We agree with Modern that these instructions placed the jury in the middle of general management decisions, in effect eviscerating the concept of employer latitude in decision-making.
Moreover, in the present case the expert was allowed to compare Modem’s reduction in force to that of other employers in general. The *36 jury was then given the authority to review the adequacy of the employer’s management decisions under a broad undefined Yea-son-able care” standard. This type of decision cannot properly be scrutinized in hindsight for its legitimacy. Neither should negligence be based on the procedures of other employers. There is no justification for giving a jury the authority to review whether reasonable care was utilized in a reduction in force based on economic conditions.
In Kerr v. Gibson’s Prod. Co. of Bozeman (1987), 226 Mont. 69, 733 P.2d 1292, this Court affirmed the review of a discharge during a reduction in force; however, the holding in Kerr was premised upon a breach of the covenant, not negligence in the reduction in force. In Kerr the employer had violated employee handbook policies in its termination procedures and in rehiring. Additionally, in Kerr, after discharging several employees, the employer then refilled the positions with lower paid employees. We affirmed the determination that this breached the covenant of good faith and fair dealing. The present case is distinguishable from Kerr to the extent that the present case is premised upon negligence of the employer in implementing a reduction in force. The present case is further distinguishable in that it is undisputed that the Billings Modern store had sustained large losses for several years. Modem made the decision to discharge two long term and highly paid employees based on economics and workloads. The present case does not involve handbook violations; neither was Mr. Heltborg’s position refilled.
This Court has recognized that an employer has a duty not to breach the covenant of good faith and fair dealing once the covenant has arisen in the employment relationship. Gates. This duty has been stated as a duty not to discharge for an improper reason, Crenshaw, 693 P.2d at 492. The breach of this duty considers the intentional conduct of an employer. We have not imposed upon the employer a duty to use reasonable care in decision-making, based upon a theory of negligence.
We conclude that the employer is not under a duty to use reasonable care in decision-making. Therefore, in the present case, the management decision to implement a reduction in force for economic reasons is not susceptible to a negligence analysis by a jury. We conclude that Jury Instmction Nos. 18 and 19 were incorrect and should not be used on retrial.
On appeal Modern also objects to the special verdict form which directed the jury to consider if Modern had negligently breached the *37 covenant of good faith and fair dealing. The special verdict form submitted to the jury was as follows
“QUESTION NO. 1
“Has the Plaintiff proved, by a preponderance of the evidence, that the Defendant breached the covenant of good faith and fair dealing?
“ANSWER: YES X NO_
“QUESTION NO. 2
“Has the Plaintiff proved by a preponderance of the evidence that the Defendant negligently breached the covenant of good faith and fair dealing?
“ANSWER: YES X NO_
“If your answers to Questions No. 1 and No. 1 are No’ go to the bottom of the Verdict Form, date and sign it and ask to be returned to Court.
“If your answer to either Question No. 1 and No. 2, or both is Yes’ go to Question No. 3.
“QUESTION NO. 3
‘What damages, if any, do you find were caused to the Plaintiff?
“AMOUNT: $170.608.66”
Modem contends that it was error to submit to the jury the issue of whether Modern negligently breached the covenant of good faith and fair dealing. It contends that a cause of action only arises where the covenant is willfully breached. Although defendant did not object to this verdict form at trial, we address this issue for retrial.
We conclude that in general a breach of the covenant of good faith and fair dealing does not involve negligent conduct, but intentional conduct. This holding accords with prior Montana cases involving a breach of the covenant of good faith and fair dealing in employment. See Gates (evidence indicated employer failed to follow its own termination policies); Crenshaw (evidence indicated employer acted in bad faith in discharging employee); Flanigan (evidence indicated employer may have had ulterior motive for discharge of employee); and Kerr (evidence indicated employer had ulterior motive in discharging employee). It also accords with the holdings of other jurisdictions in cases involving a breach of the covenant in an employment relationship. See Pugh v. See’s Candies, Inc. (1988), 203 Cal.App.3d 743, 250 Cal.Rptr. 195, 213 (“Even an honest, though mistaken, belief *38 that the employer for legitimate business reasons had good cause for the discharge would negate bad faith”). Although previous Montana employment termination cases have discussed employer negligence, no case has allowed a negligent breach of the covenant.
We conclude that the verdict form improperly commingled the concepts of negligence and a breach of the covenant of good faith and fair dealing and should not be used on retrial.
Ill
Did the District Court err in excluding Heltborg’s written statement to the Social Security Administration that he was incapable of fulfilling the physical and mental requirements of his job?
Mr. Heltborg applied for Social Security disability benefits after his termination. These benefits were denied. In his appeal to the Social Security Administration, Mr. Heltborg wrote a letter explaining his physical disabilities. A relevant portion of the letter stated:
“Although the men at the shop would help me with my work, it was becoming more apparent that my disability was making it impossible to fulfill the physical and mental requirements of my job as Service Manager. Finally, the Managers of Modem Machinery realized that this was the case and I was dismissed from my job of 22 years. I feel that it would be impossible for me to go to work as either a mechanic or Service Manager as I would be unable to perform the job duties and there would be no way that I could be helped with my insulin reactions if I were working for other companies.”
Defendants attempted to have this document admitted at trial; however, the court granted the plaintiff’s motion in limine, excluding the document.
Defendant contends that Mr. Heltborg’s ability to perform physical labor was a major issue at trial since plaintiff contended Mr. Heltborg should have been offered the option of taking a mechanic’s job. Defendant contends that this document was relevant to defendant’s assertion that Mr. Heltborg’s physical condition prevented him from working as a mechanic.
To be admissible at trial, evidence must be relevant, as defined in Rule 401, M.R.Evid. At trial plaintiff elicited testimony from Mr. Alan Brown and Mrs. Heltborg that Modern should have offered Mr. Heltborg work as a mechanic both before and after termination. Plaintiff presented this same allegation to the jury through its examination of defense witnesses. The admissions by Mr. Heltborg in his letter were certainly relevant to rebut this theory.
*39 The letter was also competent evidence. Although the letter had definite hearsay qualities (i.e., the statements by Mr. Heltborg were out of court statements and were offered for the truth of the matter asserted. Rule 801(c), M.R.Evid.), the statements were admissions of a party opponent and therefore fall within Rule 801(d)(2), M.R.Evid., an exclusion to the hearsay rule. See McCormick on Evidence § 263 (3rd Ed. 1984); 4 Wigmore, Evidence § 1048 (Chadbourn Rev. 1972) (“The statements made out of court by a party opponent are universally deemed admissible, when offered against him.”); Kekua v. Kaiser Found. Hosp. (1979), 61 Haw. 208, 601 P.2d 364, 370 (explaining the difference between an admission of party opponent which is excluded from the hearsay rule and a statement against interest which is an exception to the rules).
We conclude that this letter was properly admissible under the evidentiary rules.
IV
Did the District Court err in denying defendant’s motion for a judgment notwithstanding the verdict?
Following trial, Modem moved for judgment notwithstanding the verdict on the issues of breach of the covenant and negligence. This motion was denied. On appeal, defendant contends the motion should have been granted, urging there was no evidence to support allegations that the covenant had been breached. Modern also urges that a cause of action for negligence in an employment termination should not be extended to general management de3cisions in a reduction in force, nor should the manner in which an employee is discharged provide a basis for a negligence cause of action.
Although we agree that in general negligence does not afford a cause of action in a suit involving employment termination, we conclude that there existed issues of fact in regard to whether the covenant of good faith and fair dealing was breached, which were properly submitted for jury determination. We affirm the District Court’s denial of the motion for judgment notwithstanding the verdict.
Reversed and remanded.
CHIEF JUSTICE TURNAGE and JUSTICES McDONOUGH and HON. PETER L. RAPKOCH, District Judge, sitting for JUSTICE BARZ concur.