JUSTICE TREIWEILER
dissenting.
I dissent from the majority’s conclusion that the Uniform Building Code did not apply to the location where plaintiff Darlene Knutson was injured and that defendants were not negligent as a matter of law, based on the undisputed facts in this case.
The issue before the District Court was really a simple matter of statutory construction and application, and not nearly as complicated as suggested by the majority opinion.
Defendants purchased the building where their business was operated in 1977, and in 1981 applied for a building permit authorizing construction of an addition to the building. Prior to that construction, there were entrances on the northwest and southwest comer of the building, both of which were accessible from the parking lot located on the property. Neither entrance required use of the ramp *178 on which Knutson was injured. However, due to the 1981 addition, the entrance on the southwest corner was closed, and in order to meet building code requirements, a new entrance was constructed at the southeast corner at the rear of the building. This entrance was not accessible from the parking lot and could only be reached by the ramp Knutson was descending at the time of her injury.
The evidence was that because parking was inadequate on defendants’ premises, and because there was additional parking available across the alley behind defendants’ premises, approximately 40 percent of their customers entered their business through the rear entryway at the southeast corner of the building. Contrary to suggestions in the majority opinion, this was not primarily a parking area. In fact, public parking on the ramp was specifically prohibited.
When the southeast entrance was constructed, the Uniform Building Code provided that a ramp providing egress from a building could not exceed a slope of 12.5 percent, and required that any ramp with a slope steeper than 6.67 percent have a handrail. The defendants’ own expert concluded that the slope on this ramp was 13.62 percent and no handrail was provided.
In Herbst v. Miller (1992), 252 Mont. 503, 507, 830 P.2d 1268, 1271, we held that where the relevant provision of the Uniform Building Code has been adopted by a municipality, a violation of that provision is negligence per se. In this case, documentation provided to the District Court prior to the issuance of its order established that: the Uniform Building Code was adopted as an ordinance by the City of Great Falls on April 19, 1965; that ordinance was in effect when defendants constructed the new rear entrance to their building in 1981 or 1982; and that the ordinance was in effect on the date of Knutson’s injury.
Section 3301(c) of the Uniform Building Code, 1979 edition, provides that an “exit” from a building is “a continuous and unobstructed means of egress to a public way and shall include intervening ... ramps ... exit passageways, exit courts and yards.” Although ramps are not defined in the Code itself, § 401 provides that “[w]here terms are not defined, they shall have their ordinary accepted meanings within the context with which they are used. Webster’s Third New International Dictionary of the English Language, Unabridged, copyright 1961, shall be considered as providing ordinary accepted meanings.” As conceded in the majority opinion, a ramp is defined in Webster’s Third New International Dictionary of the English Lan *179 guage (3d ed. 1961) as “a sloping way: as a: a sloping floor or walk leading from one level to another ....”
The area where Knutson was injured was clearly a sloping way or walk leading from the level of defendants’ rear entry to the level of the alleyway. The majority’s conclusion (without any authority) that it is not a walkway ignores the undisputed fact that 40 percent of defendants’ customers entered the business premises by traversing this sloping route and that there was no other access to the rear entrance.
It is equally clear that the sloped walkway leading from the back door of defendants’ premises to the alley behind the building provided egress to a public way. Section 3301(c) of the UBC defines “public way” as “any street, alley or similar parcel of land... dedicated or otherwise permanently appropriated to the public for public use and having a clear width of not less than 10 feet.”
Having established, based on the plain language of the UBC, that Knutson was injured while traversing a ramp which provided egress from defendants’ premises, the only remaining question was whether defendants complied with the UBC’s requirements for ramps. Section 3306 of the UBC provides that:
(a) General. Ramps used as exits shall conform to the provisions of this section.
(c) Slope. Ramps required by Table No. 33-A shall not exceed a slope of one vertical to 12 horizontal. The slope of other ramps shall not exceed one vertical to 8 horizontal.
(e) Handrails. Ramps having slopes exceeding one vertical to 15 horizontal shall have handrails as required for stairways, except that intermediate handrails shall not be required.
The fact that the ramp leading from the alley behind defendants’ premises to the rear doorway did not meet the requirements set forth in § 3306 is undisputed. Therefore, there were no factual issues for the District Court to submit to the jury. The District Court was correct when it concluded as a matter of law that the UBC was applicable to the area where Knutson was injured, and that based upon the undisputed facts, defendants violated the terms of that Code. This fact situation is only made complicated by the rationale employed by the majority to arrive at its conclusion.
*180 For example, in spite of the plain language of the UBC, as set forth above, and the undisputed facts, as previously discussed, the majority concludes that the District Court’s order is particularly troubling because of the fact that there was no 'evidence upon which to base its ruling. The majority then goes on to discuss opinions by the Great Falls City Engineer and a consultant retained by defendants to the effect that the UBC was not applicable to the location in question. However, whether or not the UBC was applicable was a question of law to be determined by the District Court based upon its interpretation of the Code. As we have repeatedly held, opinion evidence is not relevant to establish a violation of law. In Heltborg v. Modern Machinery (1990), 244 Mont. 24, 795 P.2d 954, we adopted the Fifth Circuit’s reasoning from its opinion in United States v. Lueben (5th Cir. 1987), 812 F.2d 179, aff’d on reh’g (1987), 816 F.2d 1032, when it stated that:
The two questions quoted above illustrate the major surviving exception to the rule that expert opinions on an ultimate issue are admissible: an expert may not express an opinion on a conclusion of law.
Heltborg, 244 Mont. 24, 795 P.2d at 957 (emphasis added).
We held in Heltborg that:
Clearly an expert may testify to an ultimate issue of fact and we have previously so held. See, e.g., Scofield v. Estate of Wood (1984), 211 Mont. 59, 683 P.2d 1300 (court properly allowed highway patrolman to testify as to cause of accident); Wollaston v. Burlington Northern, Inc. (1980), 188 Mont. 192, 612 P.2d 1277 (court properly allowed highway patrolman to testify as to cause of accident); State v. Petko (1978), 177 Mont. 229, 581 P.2d 425 (court properly allowed expert to testify that substance was marijuana even though this was an ultimate factual issue). We emphasize, however, that there is a distinction between testimony on the ultimate factual issue, and testimony on the ultimate legal issue.
Heltborg, 244 Mont. 24, 795 P.2d at 958 (emphasis added).
For that reason, we held in Heltborg, 244 Mont. 24, 795 P.2d at 958-59, that the plaintiff’s expert in a wrongful discharge claim could not testify to his legal conclusion that the employer had violated the covenant of good faith and fair dealing. Likewise, in Hart-Anderson v. Hauck (1988), 230 Mont. 63, 748 P.2d 937, we held that it was erroneous for a witness to state his opinion regarding the law of the forum. In Smith v. Rorvik (1988), 231 Mont. 85, 751 P.2d 1053, we *181 held that a highway patrolman’s opinion regarding whether traffic laws had been violated was irrelevant and inadmissible.
Clearly, the determination of whether laws are applicable and have been violated is the exclusive responsibility of the District Court and is not, according to our previous case law, the proper subject of expert testimony. The District Judge in this case should be complimented for following our prior decisions, not criticized as he has been for ignoring irrelevant “expert” opinions. Neither should plaintiffs be criticized, as they are by the majority, for failing to offer the kind of evidence the same majority has previously ruled inadmissible.
The majority accuses plaintiffs and the District Court of simply assuming the applicability of the UBC and limiting its proof to the angle of slope on the ramp in question. However, that is not correct. The District Court’s conclusion that the UBC was applicable was based upon extensive deposition testimony and affidavits and lengthy briefing from both parties. Plaintiffs’ proof upon which the District Court’s order was based included the following: a description and photographs of the ramp and its relationship to defendants’ building and the public way behind defendants’ building; testimony regarding the pedestrian purpose for which the ramp was primarily used; the fact that parking by patrons was specifically prohibited in that area; and testimony that access to the rear door of defendants’ premises was impossible other than by traversing the ramp in question. No other evidence was necessary. Because of the undisputed evidence, the issue before the District Court was purely a legal issue, and not a very complicated one at that.
The majority opinion alleges that the arguments made by plaintiffs did not discuss the definition of “ramp” or provide any other basis for supporting the District Court’s conclusion. However, neither is that correct. The briefing provided by plaintiffs to the District Court prior to its order dated October 14,1992, fully discussed the definitions set forth in the UBC, as well as the definition incorporated by reference from Webster’s Third New International Dictionary of the English Language. No further definitions were relevant nor necessary.
The majority opinion criticizes the District Court’s lack of analysis, but then concludes, without any basis or analysis, that the sloped walkway providing the only access to the rear door of defendants’ building was not a “sloping way” or a “walk leading from one level to another.” Apparently, the majority is not willing to assume the same analytical requirements that it would impose on the District Court.
*182 The majority opinion concludes that based on its reading of the applicable case law both in and out of Montana, the area on which Knutson was injured is “more akin to a driveway, or a sloped parking area, than the type of ramp envisioned by the UBC.” However, no Montana cases are cited for that principle, nor are there any which could be cited. The majority does cite several cases from other jurisdictions. However, none of them are in any way relevant to the proposition for which they are cited. None of them even involve the issue with which this case is concerned.
Specifically, Mortimer v. Martin (Cal. Ct. App. 1957), 308 P.2d 840, was not concerned with an exterior ramp. The plaintiff in that case was injured on an inside ramp and the court held that the district court erred by failing to instruct the jury of the city ordinance requirements pertaining to ramps in that locale.
In Sorensen v. Western Hotels, Inc. (Wash. 1960), 349 P.2d 232, the facts did concern an exterior ramp. However, the only issue was whether the city’s building code could be applied retroactively to establish the defendant’s negligence.
In Miller v. Broadmoor Village, Inc. (La. Ct. App. 1975), 321 So.2d 925, the issue was whether the plaintiff was injured on an exit way from a store, as defined in the city’s building code. However, the definition of an exit way in that city’s building code was entirely different from the definitions applicable to this building, and did not include any discussion of ramps providing egress to a public way.
Grand Union Company v. Rocker (Fla. Dist. Ct. App. 1984), 454 So.2d 14, dealt only with the issue of whether a violation of the county’s building code established negligence per se, or was merely evidence of negligence. As mentioned, this Court previously decided that issue in Herbst.
Finally, Foster v. Kwik Chek Super Markets, Inc. (Ala. 1969), 224 So. 2d 895, dealt with a sloped area connecting a horizontal sidewalk to a parking lot. That court simply held that based on that city’s definition of an exit ramp, it did not meet the definition. Foster, 224 So. 2d at 896. However, the definition was entirely different than the definition with which we are concerned in this case, and the principle for which that case stands is in no way relevant to our conclusion.
The majority’s reliance on such irrelevant decisions simply illustrates its inclination to make a simple issue more complex than it should be.
The fact that the area where Knutson fell is covered by the UBC, and the fact that that Code was violated, based on the undisputed *183 facts in this case, is clear from any fair and objective reading of the plain language of the Code. Knutson’s injury due to the steepness of this entrance made dangerous by slippery conditions is exactly what the Code was designed to prevent.
The Code applies to entryways. Entryways include any ramp providing access from the building to the public right-of-way. While ramp is not specifically defined in the Code, the definition of ramp included in the Dictionary is applicable by reference from the Code. Ramp is defined as “a sloped way.”
There is no question that under the facts in this case, Knutson was injured on a sloped way providing egress from defendants’ building to the public right-of-way. Therefore, what is the issue for a jury to decide? This ramp did not conform to the UBC, and therefore, defendants were negligent per se. The only issues to be resolved were whether that negligence was a cause of injury to plaintiffs and the extent of plaintiffs’ damages. Those issues have already been decided.
This case may have provided an interesting intellectual exercise for the majority. However, they failed to consider that by ignoring the UBC’s plain language, they have once again reversed a substantial verdict in favor of a seriously injured and damaged person and have wasted the time and efforts of the trial court, the citizen jurors who participated in this case, the witnesses who testified, and the attorneys who labored on behalf of the parties.
This is another decision rendered in the practical vacuum of the Supreme Court and with very undesirable consequences for nearly everyone involved.
Once again, as it has so often in the past, the majority of this Court has substituted its own opinion of what the law should provide for the plain language of the law itself. And once again, as it has so often in the past, by imposing its values on the rest of the State, the burden of the majority’s arbitrary judgment falls on one of those least able to bear it.
For these reasons, I dissent from the majority opinion.
JUSTICE HUNT joins in the foregoing dissent.