
DA 12-0299

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 158

BRANDON W. CARTWRIGHT,

      Plaintiff and Appellant,

  v.

SCHEELS ALL SPORTS, INC.,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADV 08-1118(C)
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Antonia P. Marra, Marra, Sexe, Evenson & Bell, P.C.,
            Great Falls, Montana

      For Appellee:

            Carey E. Matovich, Jesse G. Myers, Matovich, Keller & Murphy, P.C.,
            Billings, Montana

Submitted on Briefs:  March 6, 2013

Decided:  June 18, 2013

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Brandon W. Cartwright appeals from a judgment entered against him by the Eighth Judicial District Court, Cascade County, on his wrongful discharge complaint against Scheels All Sports, Inc. A jury found that Scheels did not wrongfully discharge Cartwright from employment, and the court entered judgment awarding Scheels the costs it incurred defending this action. We affirm.

¶2 The issues on appeal are:

¶3 1. Did the District Court err when it failed to grant summary judgment to Cartwright on liability and allowed Scheels to argue that it had "good cause" to discharge Cartwright?

¶4 2. Did the court err by failing to sanction Scheels for discovery abuse and destruction of evidence?

¶5 3. Did the court err when it failed to allow Cartwright to amend the pleadings to add a claim for punitive damages under § 39-2-905(2), MCA?

¶6 4. Did the court erroneously allow Scheels' expert witness to testify as to ultimate issues of fact and law, invading the province of the jury?

¶7 5. Did the court err in allowing witnesses to testify to rumors heard at Scheels about Cartwright?

## BACKGROUND

¶8 Brandon Cartwright was employed at Scheels' store located in Great Falls, Montana, from 1996 to 2007. During that time, Cartwright was promoted to the "lead" assistant manager position in the store. By all accounts, he was a good worker.

2

¶9 Beginning in 2001 and continuing through the date of trial, Cartwright dated and lived with one of the nine other assistant managers at the Great Falls Scheels store. During the winter, spring, and early summer of 2007, he also had a "sexual fling" with J., another assistant manager at the Great Falls Scheels store. J. discussed the affair with several co-workers, some of whom then became uncomfortable working with Cartwright because his live-in girlfriend, also their co-worker, was unaware of what was going on. Darin Werner, the store manager, asked Cartwright about the situation in March and August of 2007, but Cartwright denied having a sexual relationship with J. In August of 2007, Cartwright and yet another assistant manager, Carri Blockyou, had a heated exchange concerning the situation. Shortly thereafter, Blockyou resigned.

¶10 On September 1, 2007, Werner called Cartwright and J. into his office for a meeting. Werner asked them about the rumors regarding their relationship. Both Cartwright and J. denied being involved in a romantic relationship, and Cartwright became angry. Werner fired both Cartwright and J.

¶11 Cartwright applied for and was found eligible to receive unemployment benefits. Scheels appealed to the Board of Labor Appeals, which affirmed. The eligibility decision included a determination that Cartwright had not been terminated due to his own misconduct.

¶12 In August of 2008, Cartwright filed this suit, in which he alleges that Scheels discharged him in violation of the Wrongful Discharge from Employment Act (WDEA), Title 39, chapter 2, part 9, MCA. Cartwright maintains he was fired because he had a relationship with J. and because he refused to discuss that relationship with Werner. In

response, Scheels contends Cartwright was fired (1) because of the effects his relationships were having on the assistant manager team's ability to work together, (2) because the other assistant managers had lost trust in him, and (3) because he swore at Werner when Werner asked him about his relationship with J.

¶13 In the District Court, Cartwright moved for summary judgment on the issue of liability, based on having been found eligible for unemployment benefits. The District Court denied that motion, and also denied Scheels' cross-motion for summary judgment on whether Cartwright was fired for good cause. However, the court granted Scheels' motion for summary judgment on Cartwright's claim that his discharge was based on his refusal to violate public policy. In a later order, the court denied Cartwright's motion to amend the pleadings to add a claim for punitive damages.

¶14 This case was tried to a jury over the course of five days. At the end of trial, the jury found that Scheels did not wrongfully terminate Cartwright. Cartwright appeals.

## DISCUSSION

### ISSUE 1

¶15 *Did the District Court err when it failed to grant summary judgment to Cartwright on liability and allowed Scheels to argue that it had "good cause" to discharge Cartwright?*

¶16 This Court reviews a summary judgment ruling de novo, using the same M. R. Civ. P. 56 criteria applied by the district court. *Eastgate Village Water and Sewer v. Davis*, 2008 MT 141, ¶ 18, 343 Mont. 108, 183 P.3d 873. Summary judgment should be rendered only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3).

4

¶17   In his motion for summary judgment, Cartwright argued to the District Court that, because he was found eligible for unemployment benefits, the question of whether he was wrongfully discharged is settled under the doctrines of issue preclusion and claim preclusion. He makes the same argument on appeal.

¶18   This argument is specifically prohibited by statute. Section 39-51-110, MCA, provides that a finding of fact or law, judgment, conclusion, or order made under the unemployment insurance law may not be conclusive or binding or used as evidence in any separate or subsequent action or proceeding in another forum, regardless of whether they involve the same or related parties or the same facts.

¶19   Even without § 39-51-110, MCA, the District Court was correct in denying Cartwright summary judgment on grounds of issue or claim preclusion. Issue preclusion and claim preclusion bar a party from relitigating an issue that already has been litigated and decided in a prior suit. We apply a four-element test to determine whether relitigation is barred:

   1. Was the issue decided in the prior adjudication identical to the issue raised in the action in question?

   2. Was there a final judgment on the merits in the prior adjudication?

   3. Was the party against whom preclusion is asserted a party or in privity with a party to the prior adjudication?

   4. Was the party against whom preclusion is asserted afforded a full and fair opportunity to litigate the issue that may be barred?

*Rooney v. City of Cut Bank*, 2012 MT 149, ¶ 17, 365 Mont. 375, 286 P.3d 241. Here, the District Court determined that "the issue decided in the administrative hearing [for unemployment benefits] is not identical to the issues surrounding 'good cause.' "

¶20 The District Court was correct. In the unemployment benefits proceedings, the administrative agency determined whether Cartwright had been discharged for misconduct. *See* § 39-51-2303, MCA. "Misconduct" includes willful or wanton disregard of the rights, title, and interests of a fellow employee or the employer; deliberate violations or disregard of standards of behavior that the employer has the right to expect of an employee; carelessness or negligence that causes or is likely to cause serious bodily harm to the employer or a fellow employee; and carelessness or negligence to a degree or that reoccurs to a degree that shows an intentional or substantial disregard of the employer's interest. Section 39-51-201(19), MCA. In a wrongful discharge action, in contrast, employer liability generally hinges upon whether the employer had good cause to terminate the plaintiff. *See* § 39-2-904, MCA. Under the WDEA, "good cause" is defined as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reasons." Section 39-2-903(5), MCA.

¶21 Cartwright also argues that he was entitled to summary judgment on the issue of liability because his conduct at issue was off-duty, out-of-office conduct. This is a misstatement of Scheels' case. As stated above, Scheels' position was that Cartwright's semi-secret relationship with J., an assistant manager at the store, while he lived with and dated another assistant manager at the store, was causing disruption of the store's

operations. Scheels' justification for terminating Cartwright's employment went beyond Cartwright's off-duty, out-of-office conduct, and centered on the effects of that conduct in the workplace.

¶22 We hold that the District Court did not err when it failed to grant summary judgment on liability to Cartwright and allowed Scheels to proceed to trial on the question of whether it had good cause to discharge Cartwright under the WDEA.

## ISSUE 2

¶23 *Did the court err by failing to sanction Scheels for discovery abuse and destruction of evidence?*

¶24 M. R. Civ. P. 37 allows a court to impose sanctions for a party's failure to make discovery. We review sanction orders under a deferential abuse of discretion standard, because the trial court is in the best position to know whether the parties have disregarded the rights of opposing parties during litigation, and which sanctions for such conduct are most appropriate. *Lewistown Propane Co. v. Moncur*, 2002 MT 349, ¶ 22, 313 Mont. 368, 61 P.3d 780.

¶25 In this case, Cartwright learned during discovery that, by January of 2008, Scheels had deleted his emails and data on the computer he had used at work. Cartwright says this left him unable to impeach the testimony of assistant manager Carri Blockyou and deprived him of evidence that he was well-regarded by his co-workers up until the day he was fired. Citing *Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶¶ 31-32, 297 Mont. 336, 993 P.2d 11, as authority for parties' legal duty to preserve evidence that could possibly be relevant at trial, Cartwright asked the District Court to grant him default judgment as a

7

sanction for Scheels' destruction of those electronic records, which he contended constituted discovery abuse.

¶26    Scheels' response to Cartwright's motion for sanctions included an affidavit signed by Ben Nichols, Scheels' lead System Administrator. Nichols averred that Scheels' standard practice is to deactivate a terminated employee's electronic accounts upon notice of termination, so that the terminated employee will not have access to his or her accounts. Nichols further averred that, when Scheels' Information Services Department is notified that an employee has been terminated, the employee's email account is deleted and the employee's emails are placed into a queue for at least 30 days, after which time they are destroyed. Any information left by a terminated employee on a desktop computer is eventually deleted when more room is needed on the computer for other uses. In Cartwright's case, his emails were discarded before January of 2008, in compliance with Scheels' standard practice.

¶27    The District Court denied Cartwright's request for a sanction of default judgment. Although the court allowed that Cartwright may have been prejudiced by the destruction of the email and word processing documents, it determined that alone was not sufficient to impose a sanction of default judgment. The court found that the fact of the pending administrative proceeding for unemployment benefits during the fall of 2007 was not enough to put Scheels on notice that Cartwright's files would become relevant to a civil proceeding (this one) that had not yet been filed. The court further found that Scheels did not actively conceal evidence from Cartwright, but that it failed to retain the records pursuant to a pre-existing policy. Finally, the court noted that Cartwright had not alleged

8

that the emails or documents which were deleted contained any "smoking gun" that would show Scheels' "actual" reasons for Cartwright's termination.

¶28 Cartwright has not made any showing of an attempt to conceal evidence or of bad faith when his electronic files were destroyed. Instead, the evidence was that the records were discarded pursuant to Scheels' pre-existing and routine practice and that Scheels had no knowledge of potential litigation prior to destruction. Further, numerous trial witnesses testified to the subject that Cartwright has indicated would be shown in the electronic records: that he generally got along well with other employees at the store.

¶29 We hold that the District Court did not err when it declined to sanction Scheels for discovery abuse and destruction of evidence.

### ISSUE 3

¶30 *Did the court err when it failed to allow Cartwright to amend the pleadings to add a claim for punitive damages under § 39-2-905(2), MCA?*

¶31 Grant or denial of a motion to amend a pleading is a discretionary ruling that we review for abuse of discretion. *Denton v. First Interstate Bank of Commerce*, 2006 MT 193, ¶ 17, 333 Mont. 169, 142 P.3d 797.

¶32 Under his proposed amendment to the pleadings, Cartwright would have added a claim that Scheels' violation of his right to privacy under the Montana and United States Constitutions—as alleged in another of his claims against Scheels—justified an award of punitive damages under § 39-2-905(2), MCA. That provision of the WDEA allows a terminated employee to recover punitive damages otherwise allowed by law "if it is established by clear and convincing evidence that the employer engaged in actual fraud

9

or actual malice in the discharge of the employee in violation of § 39-2-904(1)(a), MCA," which, in turn, prohibits discharge "in retaliation for the employee's refusal to violate public policy."

¶33 The District Court denied the motion to amend the pleadings. It reasoned that, in its rulings on the various motions for summary judgment, it already had rejected Cartwright's claim that his discharge was in retaliation for his refusal to violate public policy. As a result, the court concluded it already had foreclosed the possibility of Cartwright recovering punitive damages.

¶34 We agree with the District Court. In its summary judgment order, the court had observed that § 39-2-903(7), MCA, defines "public policy" for purposes of the WDEA very narrowly, as "a policy in effect at the time of the discharge concerning the public health, safety, or welfare established by constitutional provision, statute, or administrative rule." The court stated Cartwright had failed to address this statute, and that there was no indication Cartwright was invoking a policy concerning "the public health, safety, or welfare." Accordingly, the court denied Cartwright's motion for summary judgment and granted Scheels summary judgment on violation of § 39-2-904(1)(a), MCA.

¶35 Inasmuch as Cartwright's claim for punitive damages would have been based on his claim that he was terminated as a result of his refusal to violate public policy, the District Court was correct that its order granting Scheels summary judgment on the violation of public policy claim foreclosed the possibility of Cartwright recovering punitive damages. We hold that the District Court did not abuse its discretion when it denied Cartwright's motion to amend the pleadings.

10

# ISSUE 4

¶36 *Did the court erroneously allow Scheels' expert witness to testify as to ultimate issues of fact and law, invading the province of the jury?*

¶37 Trial courts are vested with great latitude in ruling on the admissibility of expert testimony. *Nelson v. Nelson*, 2005 MT 263, ¶ 31, 329 Mont. 85, 122 P.3d 1196. We review a district court's rulings on the admissibility of expert testimony for abuse of discretion. *Weber v. BNSF Ry. Co.*, 2011 MT 223, ¶ 18, 362 Mont. 53, 261 P.3d 984.

¶38 Before trial, Cartwright moved in limine to exclude the testimony of Scheels' human resource management expert, Linda Brown, on grounds that her opinions encompassed the ultimate facts and law. The District Court denied that motion. Specifically, in response to Cartwright's argument that Brown should not be allowed to testify to whether Cartwright's fellow assistant managers believed him to be truthful, the court ruled that the expected testimony would not speak to Cartwright's propensity to tell the truth but, rather, to the perception of his credibility by the other assistant managers and by Scheels' management.

¶39 At trial, Cartwright objected to portions of Brown's testimony, claiming that testimony invaded the province of the jury. Specifically, he objected to the following testimony on direct examination of Brown:

> Q. Should those actions at that September 1st meeting have affected in any way the ultimate determination by Scheels?
> [CARTWRIGHT'S COUNSEL]: Objection, Your Honor; this is speculation. It goes beyond the expertise of the witness, and it answers the question for the jury. It invades province.
> THE COURT: Overruled.
> THE WITNESS: Well, I think it is very much related to some of the human resource practice that I get involved in, sadly, frequently, where that

unprofessional, inappropriate exchange with your boss, the president, that's got to impact your judgment about that person's continued leadership ability. Seeing that interaction that challenged the authority first of all, of your immediate manager, but then to me as the president, I mean, I'm putting myself in his shoes, and certainly that kind of anger, the profanity, those are all inappropriate behaviors.

And in this case specifically behaviors that were identified in the Scheels policy manual that would be prohibited. So that had to—they had to apply their policies.

Q. Would termination under these circumstances be consistent with generally accepted human resource practice?

A. My—

[CARTWRIGHT'S COUNSEL]: Objection, Your Honor; invades the province of the jury.

THE COURT: Overruled.

THE WITNESS: In my 30 some years in this profession, any—I've been thinking about this—any time that I have been involved in a situation where there has been that kind of insubordination, and I think this was an egregious example of insubordination, I've seen employees lose their jobs for less, it would be considered an appropriate response to terminate someone.

¶40 M. R. Evid. 702 provides that an expert who has specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue may testify in the form of an opinion or otherwise. M. R. Evid. 704 goes on to state that testimony in the form of an opinion otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. "However, those rules have limitations pursuant to case law," says Cartwright.

¶41 Citing *State v. Harris*, 247 Mont. 405, 808 P.2d 453 (1991), Cartwright points out that an expert witness may not offer a determination of who is credible or truthful. He quotes a portion of Brown's testimony in which she stated Cartwright had lost credibility with his coworkers after he repeatedly denied information J. had shared willingly with coworkers. This is the same line of argument Cartwright presented in his pretrial motion

in limine. He has not now cited to any trial testimony in which Brown offered an opinion on the credibility of any witness' trial testimony. Rather, the testimony in question goes to the opinions of Cartwright's co-workers, at the time of his discharge, regarding his credibility with them.

¶42 Cartwright also relies on *Kizer v. Semitool*, 251 Mont. 199, 824 P.2d 229 (1991), and *Heltborg v. Modern Mach.*, 244 Mont. 24, 795 P.2d 954 (1990). His reliance on those cases is misplaced. In both *Kizer* and *Heltborg*, expert witnesses offered legal conclusions that the employers violated the implied covenant of good faith and fair dealing—the very issue to be decided by the juries—and we concluded that testimony was inadmissible. *Kizer*, 251 Mont. at 207, 824 P.2d at 233; *Heltborg*, 244 Mont. at 32-33, 795 P.2d at 959. Cartwright has pointed to no testimony offering a similar legal conclusion by expert witness Brown on the ultimate question presented to the jury in this case—whether Scheels terminated him without good cause.

¶43 Finally, Cartwright cites *Young v. Horton*, 259 Mont. 34, 855 P.2d 502 (1993), for the proposition that an expert may not invade the province of the jury by stating opinions that go to an ultimate issue of fact. But in *Perdue v Gagnon Farms, Inc.*, 2003 MT 47, ¶ 28, 314 Mont. 303, 65 P.3d 570, we recognized that "an expert witness may properly testify as to an ultimate issue of fact." What an expert cannot do is to render a legal conclusion or improperly apply the law to the facts. *Perdue*, ¶ 28.

¶44 Brown did not testify as to ultimate issues of law. Her testimony did not track the legal elements of wrongful discharge set forth at § 39-2-904, MCA. Cartwright's briefs fail to point out any portion of the WDEA to which Brown testified. She did not offer an

13

opinion on whether Scheels had good cause for discharging Cartwright. Instead, the questions posed to Brown by Scheels' counsel focused on Brown's expert assessment of Werner's and Cartwright's actions in the context of accepted human resource practices.

¶45 We conclude Cartwright has failed to establish that Brown's testimony constituted impermissible credibility determinations of witnesses regarding disputed facts, or improper or inadmissible legal conclusions. We hold that the District Court did not abuse its discretion by allowing Brown to testify as she did.

## ISSUE 5

¶46 *Did the court err in allowing witnesses to testify to rumors heard at Scheels about Cartwright?*

¶47 A district court has broad discretion in determining whether evidence is relevant and admissible. *Nelson*, ¶ 31. We review rulings on evidentiary matters, including motions in limine, for abuse of discretion. *Malcolm v. Evenflo Co.*, 2009 MT 285, ¶ 29, 352 Mont. 325, 217 P.3d 514.

¶48 Cartwright points out that M. R. Evid. 802 disallows the use of hearsay testimony, except as otherwise provided by statute or rule. Without identifying specific testimony to which he objects, he argues that his co-employees should not have been allowed to testify to the substance of specific rumors they heard about him. In the face of Scheels' response that he failed to object to all such testimony at trial, he maintains this issue was preserved by his filing of a motion in limine on this subject prior to trial.

¶49 In denying Cartwright's motion in limine, the District Court stated the motion could not be granted without knowing the specific testimony at issue; therefore, the

14

proper way to handle the matter would be through objections at trial. The court further stated that evidence concerning Cartwright's conduct leading to the assistant managers' loss of trust in him would be critical to Scheels' defense of its termination decision.

¶50 A statement does not fit within the definition of hearsay if it is not offered to prove the truth of the matter asserted, but is offered instead to show the statement's effect on the witness' state of mind at the time the witness heard the statement. *Murray v. Talmage*, 2006 MT 340, ¶ 13, 335 Mont. 155, 151 P.3d 49; *Moats Trucking Co. v. Gallatin Dairies, Inc.*, 231 Mont. 474, 479, 753 P.2d 883, 886 (1988). Our review of the transcript convinces us that the testimony of Cartwright's co-workers regarding workplace rumors was not offered to prove that a sexual triangle including Cartwright existed, or that the rumors were true. Rather, that testimony was offered to show the effect the rumors had on the listeners and on Scheels' workplace and business. For example, Scheels assistant manager Sarah Lawson testified that the rumors that were circulating caused her to feel a division between those who knew and those who did not know of the "fling." Assistant manager Colin Pearson testified that those aware of the romantic triangle did not know who to trust or who to talk to, and that they spent a lot of time with rumors instead of doing their jobs. This testimony provided context for the concerns and actions on the part of Scheels' management that followed.

¶51 We hold that Cartwright has not demonstrated any instances in which the District Court abused its discretion in admitting the testimony of witnesses as to rumors they heard at Scheels about Cartwright.

## CONCLUSION

¶52 Cartwright has failed to establish error by the District Court under any of the issues he has raised on appeal. The judgment entered by the District Court is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE
/S/ BRIAN MORRIS